(No. 26110.—

MAE A. DIAL, Admx., Appellee, *vs.* MILDRED DIAL, Appellant.

*Opinion filed November 24, 1941.*

Wilson, J., dissenting.

Saum & Brock, and Claude N. Saum, guardian *ad litem,* for appellant.

Pallissard & Smith, for appellee.

Mr. Justice Farthing delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Iroquois county which construed the last will and testament of Robert H. Dial, deceased, and ordered partition of two parcels of real estate, one devised by the testator, and the other devised by the testator's wife, to Earl H. Dial, now deceased. Appellee Mae A. Dial is the widow of Earl, and the appellant, Mildred Dial, is his sister.

Robert H. Dial died testate May 28, 1926, leaving his widow Florence E. Dial and their two children Earl H. and Mildred Dial as his only heirs. By the third section

of his will he devised all his real estate to his widow for life. By the fourth section he devised to his son Earl, subject to the above life estate of his widow, an undivided one-half of all his real estate in fee. The controversy in this suit arises largely over the construction of the fifth section of the will, which reads as follows: "I give, devise and bequeath the remaining undivided half of my real estate, subject to the life estate therein of my said wife, to my said son, Earl H. Dial, as trustee for my daughter Mildred Dial, who is afflicted, and I enjoin upon him to see that she has proper care and attention as long as she lives. Upon the death of my said daughter, the title in fee to the share so bequeathed to my said son as trustee, shall go to my said son Earl H. Dial, in fee simple absolute."

Florence E. Dial, the widow and life tenant, died testate November 11, 1935. She devised and bequeathed her entire estate to her son, Earl, stating she made no provision for her daughter because "she is amply provided for by the will of my deceased husband." Earl Dial was given an improved parcel of real estate in Watseka under his mother's will, and he and his wife Mae A. Dial occupied it as their residence. April 7, 1940, Earl Dial died intestate leaving his widow, Mae, and his sister Mildred as his only heirs. Prior to, at the time of, and subsequent to her father's death, Mildred was an inmate of the Illinois Asylum for Feeble Minded Children at Lincoln, Illinois. Earl Dial was in possession of the farm devised under the fifth section of his father's will until his death, and the parties agree that he furnished proper care and attention for his sister as long as he lived and that she has since received the same care.

The decree found the testator's intention was to provide for the proper care of his daughter Mildred during her lifetime, and that Earl Dial had furnished such care and attention until his death; that to effectuate the father's intention might well require more than the trust estate

could produce as income and that the "vested remainder" of Earl Dial created by the fifth section of the will might be cut down and, if necessary, exhausted, in order to carry out the testator's intention with respect to Mildred. The court also found the language of the fifth section neither expressly nor inferentially disclosed an intention to build up a fund to be held for Mildred Dial, and that, hence, an accounting was not due from the estate of Earl H. Dial. It was decreed that Robert H. Dial's will created a trust in an undivided one-half interest in his real estate and that a successor trustee be appointed to administer the trust. The decree held Earl's widow, Mae A. Dial, was the owner in fee simple of (1) one-half of the real estate which was devised to Earl by the fourth section of his father's will, (2) one-half of the remainder interest in the property devised to Earl by the fifth section of his father's will, subject to the trust in favor of Mildred, and (3) one-half of the residential property in Watseka, together with an estate of homestead in this property. It follows that Mildred Dial received the other one-half interest in fee in each of these parcels of real estate, although the decree does not expressly so find. The decree also held that Mae A. Dial had dower in the other one-half of the property devised under the fourth section of Robert H. Dial's will and the other one-half of the residence property in Watseka. Partition was ordered on the foregoing basis.

The first question to be determined is what interests were created by the fifth section of Robert H. Dial's will. Whether a trust was created for the benefit of Mildred Dial, or whether an equitable charge was placed on the land as security for Mildred's interest thereby created, depends upon the testator's intention as revealed by the language of the will. Section 10 of the Restatement of Trusts points out both the similarities and the differences between a trust and a charge. They are alike in that in either case the one holding title holds it subject to an equitable interest in

another person. They differ in that in the case of a charge, the one holding title is the owner of the land subject only to a lien on the property in favor of the equitable encumbrancer; in the case of a trust the trustee, though he has title, is not the beneficial owner of the property. There is a fiduciary relation between trustee and beneficiary but not between a holder of property subject to a charge and the equitable encumbrancer. One holding property subject to a charge may properly transfer his interest in the property to a third person (subject to the charge), but a trustee cannot unless expressly authorized. In discussing the nature of a charge, Perry on Trusts, section 567, says: "It seems more accurate to describe such a charge upon the devised or descended property as an equitable lien rather than a technical trust. The lien is merely the legatee's security for payment of his legacy when it becomes due. Upon failure of payment after the legacy has become due, equity will enable the legatee to foreclose the lien even against a purchaser for value unless he has purchased without notice. Until the legacy has fallen due and there has been a failure to pay it, the only fiduciary duty of the owner of the property seems to be not to destroy the lien by transferring to a purchaser without notice and not to commit waste which would impair the value of the security." The test laid down by the Restatement, (section 10,) to determine whether the interest created is a trust or a charge, is stated as follows: "If the transferor manifests an intention to impose a duty upon the transferee to deal with the property for the benefit of a third person and to give to the third person the beneficial interest therein, a trust is created; if he manifests an intention not to impose such a duty upon the transferee, but to give to the transferee the beneficial interest therein, and to give a security interest to the third person, an equitable charge is created." Viewed in the light of the above principles, we think the testator created a trust for the benefit of

Mildred Dial, and did not give her a mere charge or lien on the land as security for the payment of whatever amount might be necessary for her maintenance, care and attention. It is noteworthy that the interest of Earl H. Dial, while Mildred was alive, was twice stated to be that of a trustee, and a duty was imposed upon him to see that she received proper care and attention as long as she lived. At her death the title which he had theretofore held as trustee was to end and he was then to become the beneficial owner of the land. We think the language manifests an intention that Earl should deal with the property for the benefit of his sister Mildred, and not merely an intention that he should only refrain from committing waste or from transferring his title to an innocent purchaser for value. A fiduciary relation was created and as long as she lived Mildred was beneficial owner of the land. In view of this holding, it was proper for the circuit court to decree the appointment of a successor trustee to carry out the purposes of the trust. However, that court erred in refusing to order an accounting. The language shows no intention to give Earl H. Dial any beneficial interest as long as his sister should live, nor does it show an intention to limit Mildred's interest to such an amount as might be necessary from year to year for her proper care and support. She was entitled to all the income from the property during her lifetime and also to as much of the *corpus* of the trust as should be necessary for her proper care and attention if the income should not be sufficient, even though it exhausted the trust estate.

The next question is whether the widow of a deceased person is entitled not only to a fee interest as provided by statute, but also to dower in the portion not taken in fee. Since Earl H. Dial died April 7, 1940, this must be determined from the provisions of the new Probate act, which became effective January 1, 1940. Section 11 of that act (Ill. Rev. Stat. 1939, chap. 3, par. 162) provides that when

an intestate leaves a surviving spouse and also a sister, as here, the surviving spouse is entitled to one-half of each parcel of real estate of which the decedent died seized and to which the surviving spouse does not perfect his right to dower in the manner provided in section 19 of the act. Section 19 states that the surviving spouse is barred of dower unless he (or she) perfects his right thereto by filing at the time and in the manner therein provided, a written instrument describing the real estate declaring his intention to take dower therein. The law before the adoption of the Probate act was that the surviving spouse was entitled to one-half of the real estate in fee and dower in the other one-half. (*Shoot* v. *Galbreath,* 128 Ill. 214; *Sutton* v. *Read,* 176 id. 69.) Under the new Probate act we hold the surviving spouse may have one-half of each parcel of real estate in fee or, in the alternative, may have dower in the entire tract, but that he or she is not entitled to both. Rule 3(a) of section 1 of the Descent act, (Ill. Rev. Stat. 1939, chap. 39, par. 1,) in force prior to the adoption of the present Probate act, provided the manner in which the estate of an intestate leaving a spouse surviving and also parents, brothers and sisters of the deceased and no children, as here, should descend and be distributed. It provided one-half of the real estate should go to the surviving spouse, and was silent as to dower. Section 1 of the Dower act then in force, (Ill. Rev. Stat. 1939, chap. 41, par. 1,) provided the surviving spouse should be endowed of the third part of all the lands whereof the deceased husband or wife was seized of an estate of inheritance at any time during the marriage unless the same shall have been relinquished in legal form. Thus the right to dower, in addition to the fee interest, was conferred by the Dower act and not the Descent act. This right was given unless dower was relinquished by affirmative action. Both the Descent act and Dower act were repealed, effective January 1, 1940, and the rights are now controlled by the

new Probate act. As above seen, section 11 gives the surviving spouse a fee interest only in those parcels in which the right of dower has not been perfected by affirmative action as provided by section 19. It necessarily follows that the surviving spouse, by perfecting the right to dower in accordance with section 19, is choosing not to take a fee interest in that real estate, and that she is not entitled to dower unless she perfects her right thereto by affirmative acts which preclude her from taking any fee interest in that land. This view is given support by the provisions of section 19 giving the surviving spouse ten months after issuance of letters of administration in which to file a petition declaring his intention to take dower and permitting the probate court to extend that time if litigation is pending which affects the share of the surviving spouse in the estate. By section 204 of the Probate act the time allowed for creditors to file claims against the estate is within nine months after the issuance of letters of administration. It seems likely that the reason for this extra one month allowed for perfecting the right to dower after the time has elapsed for filing claims against the estate is to enable the spouse to determine whether it is to his advantage to take a fee interest or dower, the decision as to which would be affected by the amount of claims against the estate. Since there is no showing of an attempt on the part of Mae Dial to perfect her right to dower, it follows the circuit court erred in decreeing she was entitled to dower in part of her husband's property.

The remaining question is whether, under the new Probate act, Mae A. Dial, as widow, was entitled to one-half of the future interest her husband owned individually which was to take effect in enjoyment on the death of Mildred Dial. Counsel for both parties have referred to this interest as a remainder. We are of the opinion that he took an interest in fee as trustee and that his future interest was an executory devise in the nature of a shifting use.

However, the decision on this point would be the same in either case. Under the circumstances presented and for convenience, only, since the chancellor and counsel alike have termed the interest in question a remainder, we shall use that terminology. It is conceded that under section 1 of the old Descent act, *supra,* the property which descended to this widow included remainders and reversions. It is urged this is no longer the law because of the difference between the language employed in section 1 (3a) of the Descent act and that in section 11 of the Probate act. Section 1 of the Descent act provided that estates, both real and personal, of residents in this State dying intestate should descend to and be distributed as follows: "Third (a) When there is a widow or surviving husband and also parents, brothers and sisters of the deceased and their descendants but no child or children, or descendants of a child or children of the intestate, then * * * one-half of the real estate * * * shall descend to such widow or surviving husband as an absolute estate forever." Section 11 of the Probate act provides the intestate real and personal estate shall descend and be distributed as follows: "Third, when there is no descendant but a surviving spouse and also a parent, brother, sister, or descendant of a brother or sister of the decedent; (a) to the surviving spouse * * * one-half of each parcel of real estate *of which the decedent died seized,"* etc. The language in the Probate act not found in the old Descent act is that the portion of real estate given the surviving spouse is one-half of each parcel "of which the decedent died seized." It is claimed that because of this language a widow does not inherit any part of a remainder because the intestate was not "seized" of the remainder. It is true that, strictly speaking, one is not seized of an estate unless he has the right to immediate possession in the land, and that in this sense there can be no seisin of a remainder interest. How-

ever, we believe that the General Assembly did not intend to so use the word "seized" in this section of the act. Section 11 purports to make a complete disposition of an intestate's property, varying according to the closeness of the relationship of his heirs and even providing for an escheat to the county when he leaves no known kindred. The first sentence of the section states that "the intestate real and personal estate" of a resident decedent should be distributed in accordance with the provisions of that section, without making any exceptions. Sub-section 3 of that section, after providing the widow's share above quoted, recites that "to the parents, brothers, and sisters of the decedent in equal parts one-half of each parcel of real estate in which the surviving spouse does not perfect his right to dower and, subject to the dower of the surviving spouse, all of each parcel of real estate in which the surviving spouse perfects his right to dower," etc. By this language the parents, etc., are given only a one-half interest in the real estate, if there is no dower taken by the surviving spouse. If the contention of appellee were sustained, there would be an incomplete disposition of property under the section under this set of facts. The parents, etc., would take one-half, and no disposition of the other one-half would be provided. This seems to us a conclusive reason for holding the General Assembly did not use the word "seized" in its technical sense, but meant thereby the same as if it had used the word "owned." Otherwise we would be compelled to hold that, since the Descent act has been repealed, the other one-half would descend to those who, by the common law, would have been heirs, a result manifestly not intended by the legislature. In such circumstances we are impelled to hold that the General Assembly used the word seized in its more popular sense, to mean the equivalent of "owned." The court properly decreed that the widow, Mae Dial, inherited an undivided

one-half interest in the future interest owned by Earl Dial at the time of his death created by clause five of his father's will.

The decree is reversed in so far as it refused to order an accounting, and in so far as it allowed Mae Dial a dower interest in the property, and in all other respects is affirmed. The cause is remanded, with directions to proceed in accordance with the views herein expressed.

*Affirmed in part, reversed in part,*
*and remanded, with directions.*

Mr. JUSTICE WILSON, dissenting:

Although I fully agree with the majority opinion's disposition of the dower questions, I cannot concur in the conclusion that the fifth section of Robert H. Dial's will created a trust for the benefit of his insane daughter, Mildred Dial, rather than a charge on an undivided half of his land for her benefit. The majority opinion, in order to reach its result ignores basic rules of testamentary construction. The cardinal rule, to which other rules must yield, is to ascertain the intention of the testator from a consideration of the entire will and to give it effect, unless he attempts to accomplish a purpose or to make a disposition contrary to some rule of law or public policy. (*Hartwick* v. *Heberling,* 364 Ill. 523; *Norton* v. *Jordan,* 360 id. 419; *Muhlke* v. *Tiedemann,* 280 id. 523.) In ascertaining the testator's intention the words of the will should be read in the light of the circumstances under which the will was made, and to that end the court may put itself in the place of the testator for the purpose of determining the objects of his bounty or the property which is the subject of disposition. (*Dahmer* v. *Wensler,* 350 Ill. 23.) It is proper, this court has declared, in such an inquiry to take into consideration all the circumstances under which the will was executed, including the nature, extent and condition of the testator's property as well as his relations to his family and the bene-

ficiaries named in the will. *Norton* v. *Jordan, supra; Dahmer* v. *Wensler, supra.*

Prior to, at the time of, and subsequent to her father's death, Mildred was an inmate of a State institution for feeble minded at Lincoln, Illinois. She was an inmate of this institution at the time her father executed his will on May 15, 1926. The fifth section of his will reflects a careful attempt to make adequate provision for the afflicted daughter without vesting title to any of the real estate in her. This purpose the testator sought to attain by devising an undivided one-half of his real property, "subject to the life estate therein of my said wife," to his son, as trustee for his daughter. Apparently the one contingency not anticipated by the testator has happened, namely, his son, Earl, has predeceased his daughter, Mildred. The courts should, however, apply the law to the factual situation presented and construe the will as it was executed. Construing the will in the light of the circumstances attending the testator who well knew of the mental condition of his daughter, his manifest intention was that she continue to receive the same care after his death as she received during his lifetime. By placing a charge for her care and attention upon one-half of his real estate so long as Mildred lives the testator indicated in plain and unmistakable language his desire that she should not acquire title to this or any other property through his will. The language directing the son to provide proper care and attention for his sister is a direct charge upon the vested remainder devised to the son by the last sentence of the fifth section. Stipulated facts disclose that the daughter has at all time been furnished adequate care and attention,—indeed, of the same character as she received during her father's lifetime. The defendant is, hence, not entitled to an accounting of the rents and profits collected from the property devised in trust during the period between her mother's death on November 11, 1935, and her brother's death on April 7, 1940.

Since the remainder interest in the property charged with her support was vested in her brother, Earl, the surplus rents and profits, if any, belonged to him. *Howe* v. *Hodge,* 152 Ill. 252.

It is respectfully submitted that a correct application of the test announced by section 10 of the Restatement of Trusts leads inevitably to the conclusion that an equitable charge was created in favor of Mildred Dial. Circumstances under which the will was made preclude a conclusion that the testator, Robert H. Dial, created a trust in favor of his insane daughter. In order to ascertain and effectuate the testator's intention, the court may put itself in his place for the purpose of determining the objects of his bounty and the property which is the subject of disposition. The fact that Earl H. Dial, the son, is twice referred to as "trustee" is not decisive. A technical construction of words and phrases will not be carried to the extent of defeating the obvious general intention of the testator, and this intention will be given effect even though the language may not be clear or technically correct. (*Papa* v. *Papa,* 377 Ill. 316.) The obvious intent of the testator was to make certain that his afflicted daughter receive the same degree of care and attention after his death as she had received during his lifetime. On the other hand, one purpose the testator did not have in mind, and, indeed, was the farthest from his mind, was to accumulate a fund for his daughter, a fund which could be of no useful service to her. It is not the province of a court to make a new will for the testator, as the majority opinion does, but to give the will he made the effect he intended as shown by its language, the circumstances attending its execution, and the testator's relations to his family and the beneficiaries named in his will.

For the reasons stated, among others, I am impelled to dissent, in part, from the majority opinion.