(No. 32050.— )

KATIE M. A. PECK, Appellant, *vs.* DONALD H. DRENNAN *et al.,* Appellees.

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

S. S. DuHamel, and Thomas W. Hoopes, both of Springfield, for appellant.

Chapin & Chapin, of Springfield, for appellees.

Mr. Justice Hershey delivered the opinion of the court:

Katie M. A. Peck filed in the circuit court of Sangamon County a bill to construe the joint will of Charles F. Drennan and Kate Haire Drennan, husband and wife. Donald H. Drennan, B. Homer Drennan, individually and as executors of the will of Charles F. Drennan, deceased, Jane Ann Drennan, and John Charles Drennan, and the unborn descendants of Donald H. Drennan and Katie M. A. Peck were made parties defendant. On March 3, 1951, the defendants filed their motion to dismiss the plaintiff's complaint. The plaintiff elected to stand by her complaint and the court entered a decree dismissing the complaint. From the decree dismissing the complaint an appeal has been prosecuted to this court.

On January 25, 1932, Charles F. Drennan and Kate Haire Drennan executed their last will and testament, properly signed and attested. Kate Haire Drennan died testate in Sangamon County on December 20, 1936. On February 2, 1937, the will here sought to be construed was filed and admitted to probate as the last will and testament of the said Kate Haire Drennan. At the time of her death she owned some personal property not here involved and 79⅓ acres of land, individually, in Sangamon County. She owned in common with her husband some 500.44 acres located in Sangamon County. At that time her husband owned individually 165⅓ acres located in Sangamon County. On November 14, 1949, Charles F. Drennan departed this life in said Sangamon County. On December 2, 1949, the same last will and testament was again filed in the office of the probate clerk of Sangamon County, as the last will and testament of the said Charles F. Drennan, deceased, and on December 23, 1949, by order of the probate court of Sangamon County, was admitted to probate as the last will and testament of Charles F. Drennan.

The will of January 25, 1932, was jointly executed by Charles F. Drennan and Kate Haire Drennan. After directing the payment of all just debts and funeral expenses, and bequeathing the personal estate of each to the survivor of them for life, they divided their lands, that which they owned both individually and in common, into three separate farms, devising one farm each to their children, Katie M. A. Peck, Donald H. Drennan, and B. Homer Drennan, for life and thereafter to the heirs of their body in fee simple, forever. It was then by the sixth clause stated, that, "We, and each of us, hereby mutually agree, and the above described real estate is hereby devised to our said children on condition, that each of said children is to have the use and possession of one-half of the real estate devised to such child, from and after the death of one of us."

Provision was made for the distribution of the real estate should any child die leaving no surviving heirs of the body, and should all three children die leaving no descendant. The surviving testator was nominated as executor with Donald H. Drennan, or, in case of his death or inability to act, then B. Homer Drennan to act, as coexecutor with the survivor. Upon the death of the surviving testator both Donald and B. Homer, or the survivor of either, were to act as executors.

Upon the death of Kate Haire Drennan, Charles F. Drennan and Donald H. Drennan became executors under the will. On April 1, 1938, they filed their final report and were discharged as such executors. Upon the death of Kate Haire Drennan, Charles F. Drennan, her husband, took possession of the real estate described in the joint will as devised to Donald H. and B. Homer Drennan, respectively, and continued so in possession until his death, receiving all rents, issues and profits from such lands. Charles F. Drennan allowed appellant to have the use and possession for her lifetime of all real estate described as devised to her in the will.

In her complaint the appellant alleged that the provisions of the will were ambiguous and doubtful, setting forth two possible meanings for the clauses of the will whereby the lands of the two parties were devised to their three children. One meaning (A) alleged for the will was that each child was to take a life estate in one half of the lands of Kate Haire Drennan in possession and a life remainder in the other half, subject to a life estate in such half by implication to her husband, Charles F. Drennan. A second meaning (B) alleged that the sixth clause (set out above) might mean that each child was to take a life estate in one half of the lands of Kate Haire Drennan in possession and a life estate in remainder in the other half subject to a life estate in such half by implication in Charles F. Drennan,

subject to a condition precedent that Charles F. Drennan permit them to occupy one half of the lands owned by him during his lifetime.

Uncertainty was also alleged as to whether the will was intended to be the separate will of each testator or a joint disposition of their property, as to who were to be executors and their duties, as to when title was to vest in devisees, as to the interests of the heirs on Kate Haire Drennan's death, as to where the land would vest on death of two or more of the children, as to what estate is taken by surviving testator in the estate of deceased, as to the interests of appellant in Charles F. Drennan's real estate, and as to the disposition of the residue of real estate of each testator upon the death of the survivor.

Katie M. A. Peck now prosecutes this appeal, contending the will is ambiguous and uncertain as alleged in the original complaint before the circuit court, and that the said court erred in decreeing the dismissal of such complaint.

The court will take jurisdiction to hear and determine bills to construe wills where there is doubt or uncertainty as to the rights and interests of the parties arising under such wills. (*Sherman* v. *Flack,* 283 Ill. 457.) Just as certainly, the court will refuse to assume jurisdiction of a bill to construe a will which is neither ambiguous nor uncertain, where there is no equitable estate to be protected or equitable right to be enforced. The court never acquires jurisdiction to construe a will merely by allegation that a question requiring construction exists, when the record shows there is no such question. *Bartlett* v. *Mutual Benefit Life Ins. Co.* 358 Ill. 452; *Chicago Title and Trust Co.* v. *City of Waukegan,* 333 Ill. 577.

"A joint will is a written instrument executed and published by two or more persons disposing of the property, or some part of the property, owned jointly or in common by them or in severalty by them. On the death of the testator first dying it is subject to record and probate as

his will, and on the death of the surviving testator it is subject to probate as his will." (*Curry* v. *Cotton,* 356 Ill. 538.) The will here under consideration was executed by a husband and wife disposing of their real estate owned in common and in severalty by them. The dispositions directed were to be upon the death of each testator. The will was probated as the will of the wife, Kate Haire Drennan, and was admitted to probate as the will of Charles F. Drennan, her husband. It was jointly executed, and properly attested. The instrument, in the absence of any defects, falls under the foregoing definition and is a joint will.

It is a general rule of law that joint wills are irrevocable without notice, and generally it is required that such wills are executed in pursuance of a compact or contract between the executing parties, the promise of each being consideration for the other. The rule of irrevocability is particularly applicable where the joint will is that of a husband and wife. Due to the relationship of mutual trust and confidence imposed by such status, it may be presumed that the provisions are induced by the mutual love, respect for, and faith which, the parties have in each other. The consideration thus arising from the relationship, and the fact of the joint execution of the instrument, gives rise to the presumption of a contract or agreement between the parties, husband and wife. By notice of revocation such will may be made inoperative as to the disposition of the property of the party giving notice, but it definitely becomes irrevocable after the death of one of the parties. *Frazier* v. *Patterson,* 243 Ill. 80; *Curry* v. *Cotton,* 356 Ill. 538.

The instrument here in question provided in its twelfth clause that the parties thereby disposed of their separate estates in like manner as if they constituted a whole, and that each joined in the instrument in consideration of the joinder of the other and that "this will is not revocable or subject to change or alteration by a codicil or otherwise,

except by our joint act." Neither Kate Haire Drennan nor Charles F. Drennan ever gave notice of revocation during the life of both of them, nor ever by their joint act attempted to revoke or terminate the effect of this will. Hence, the instrument is in full force at this date, having never been rescinded in any manner.

The purpose of construing a will is to ascertain and, if possible, give effect to the intention of the testator. In interpreting a particular provision of a will, the law authorizes and requires a consideration of the whole will, and the testator's intention must be arrived at from a consideration of all the language used in whatever part of the will such language can be found. (*Golstein* v. *Handley,* 390 Ill. 118; *Bender* v. *Bender, 292* Ill. 358; *Keiser* v. *Jensen,* 373 Ill. 184.) Where the language of the will has a settled legal meaning, the intention of the testator is to be drawn from that language, and surrounding circumstances will not be permitted to impart a different meaning from that openly expressed, unless there exists such an ambiguity or uncertainty as to permit and require a construction by the court. (*Allen* v. *Beemer,* 372 Ill. 295.) Thus, where the language of a will, on its face, has a clear and unmistakable meaning, that meaning will be taken as the expression of the testator's intention. Even though, by the application of a variety of meanings for the words and phrases expressed in the instrument and by the submission of possible intents affixed to that language, a completely different meaning may be attached to certain parts of the will, such meanings will not be considered to find jurisdiction for will construction when a plain, clear and concise meaning is evident from the language as used in the clauses of the will taken as a whole. Tortured constructions will not negate the intention expressed on the face of the will.

Meaning "A" assigned to the third, fourth and fifth clauses of the will by the appellant is accomplished by ignoring the plain language of the sixth clause of the will.

That clause relates to "the use and possession of one-half of the real estate devised to such child." It is the express intent of the testators in the twelfth clause of the will that their real estate be treated as a whole. The language of the third, fourth and fifth clauses describes three separate farms composed of the real estate owned by both Kate Haire Drennan and Charles F. Drennan. It is these devised and described lands that the sixth clause clearly refers to. To reach the appellant's construction that each child take only a life estate in one half of the lands of their mother in possession and a life remainder in the other half subject to a life estate in such half by implication in their father, it is necessary to supply the words "by the parent first dying" in order to define the lands referred to by the sixth clause. When the meaning is clear as the language appears in the will, a meaning will not be assigned which is possible only through the addition of terms. (*Jordan* v. *Jordan,* 281 Ill. 421.) From the clear meaning of the language expressed, as shown above, no implication of a life estate, in one half of the lands of the first testator to die, arises in the surviving testator. By the admission of the appellant herself, devises by implication are not favored and cannot be inferred from silence on the subject but must be based upon some expression in the will. *Pontius* v. *Conrad,* 317 Ill. 241; *Martin* v. *Martin,* 273 Ill. 595.

Possible meaning "B," assigned by the appellant, is that each child should receive, upon the death of the first testator to die, a life estate in one half of the lands of such testator subject to the condition precedent that the survivor, here Charles F. Drennan, permit them to occupy one half of the lands owned by him during his lifetime. "Courts are always reluctant to construe a condition to be precedent when to do so might defeat the vesting of estates under a will, and, although the words are in form of a condition precedent, the general intention of the testator as collected from the four corners of the instrument, showing a different

purpose, will prevail." *Weaver* v. *Ashcraft,* 339 Ill. 197; *Chapin* v. *State Treasurer,* 361 Ill. 645.

It is the usual rule that where a conveyance is made upon condition that some specific act be done, such clause creates a covenant rather than a condition. If the meaning is doubtful as to whether a clause is a condition or covenant it will be construed as a covenant, because the law favors the vesting of estates rather than their destruction. *Dunne* v. *Minsor,* 312 Ill. 333.

By clauses three, four and five certain described real estate belonging to both testators is devised to their three children. The testators declare that their respective estates are to be disposed of as a whole. The testators even explain that the division of the lands into three farms is not equally made because of various advancements made to the children. It is thus the manifest express intent of the testators, clearly indicated by their joint will, that their lands be so divided among their children. It is, obviously, not their intention that any child be deprived of that which is specifically devised to him, else such detailed declarations of the parents would never have been incorporated in the will. The very language of the disputed sixth clause identifies it as a statement of the agreement made between the parties to the joint will in order to effectuate their intent. It is an express agreement between the testators that upon the death of one of the testators, the other *covenants* to allow each child to have the use and possession of one half of the respective described farms. To hold that this clause evidences a condition would be contrary to the express intention of the parties in every other part of the instrument. Since only in the contingency that the wife die first, would less than one half of any farm so devised belong to the first deceased testator, this express agreement must have been included in the will to assure the intended disposition of the property. Only such a compact squares itself with the express meaning of the entire instrument. The entire

agreement of the wife, plus all the support arising from the relation existing between the parties, is consideration for the agreement of the husband, only part of which is expressed in the completed joint will. Mutual promises existed between these parties. There has been performance by the wife upon her death, the exact situation in which this express covenant finds full meaning. Only as a covenant does this sixth clause effectuate the purposes of the will as gathered from its four corners. To treat it as a condition precedent would place in the husband's hands the possibility of effecting a revocation of at least a part of the will after the death of his wife, in contravention of the twelfth clause and the settled rule of irrevocability of such joint wills, especially after the death of one of the testators.

There is no attempt by the will to convey any part of the lands owned by Charles F. Drennan, upon the prior death of Kate Haire Drennan. It merely expresses an agreement on his part to allow the children to have the use and possession of such of his lands as is necessary to effectuate the intent of their joint will.

It is true that upon the death of Kate Haire Drennan, the said sons, Donald H. and B. Homer Drennan, did not enter into the use and possession of one half of the lands devised to them in clauses three, four and five, but rather the husband remained in full use and possession of them. It would have been necessary only for the husband to have allowed to Donald H. Drennan the use of forty-three acres of his lands to fully effectuate the intention of the will. Since the father is now dead and the necessity for him to allow such use and possession never arose, any question of the propriety of such act is moot. It is a rule of law that a beneficiary or devisee under a will may waive benefits received thereunder. *People* v. *Flanagin,* 331 Ill. 203.

It thus appears that the meaning of the will is clear and unambiguous from its language alone, without any construction necessary. The described premises were de-

vised to the respective children for life, following the death of the testators, the children to be allowed the use and possession of one half of the described farms after the death of one of the testators. The executors are readily ascertainable, having been, obviously, found and approved by the court upon probate of this will following the death of each party. All objections raised by the appellant are clearly answered by the express terms of the instrument. The will being clear and certain, the court is without jurisdiction to construe it. The circuit court of Sangamon County thus did not err in allowing the motion of defendants to dismiss the complaint requesting construction of the will.

For the reasons assigned, the decree of the circuit court of Sangamon County is accordingly affirmed.

*Decree affirmed.*