## Ogle *v.* Durley, et al.

No. 39442 February 7, 1955 77 So. 2d 688

*Robert B. Smith,* Ripley, for appellants.

34

*Chatham & Walker,* Hernando, for appellees.

GILLESPIE, J.

On April 1, 1941, Mrs. Lucy Y. Wilson died testate. By her will she devised to her son, T. Webber Wilson, a 476 acre farm in Tate County, known as the Featherston Place. The following codicil was added to her will: "Since writing my will, I have reasons for adding this, that after all taxes are paid, I want Webber to divide equally the income of the farm with Rosa Mai Durley, his sister, as long as she lives." After Mrs. Wilson's death, T. Webber Wilson took possession of the farm, and on April 3, 1943, leased the same to Harold Ogle for the year 1944 at a rental of $1500, which lease was subsequently extended for the years 1945 and 1946. By agreement, $100 was deducted from the 1944 rent, and $200 from the rent in each of the years 1945 and 1946

for certain improvements made by Ogle, the tenant. For the year 1947, Ogle paid $1300 rent for the Featherston Place.

On January 31, 1948, T. Webber Wilson died testate, and by the terms of his will, he devised to his wife, Lucye Farrar Wilson (now Mrs. Lucye Farrar Harper) a life estate in the Featherston Place, with the remainder to his niece, Mrs. Jane Wilson Starnes. His will contained the following provision: "Of course, she (referring to his wife) understands that $100 per year of said farm income is to be given to my sweet sister, Mrs. W. G. Durley, as I have always done since mama's death."

On February 7, 1948, Mrs. Lucye Farrar Wilson entered into a written rent contract with appellant, Harold Ogle, leasing the Featherston Place for a five-year period at an annual rental of $1500 per year, that is, for the years 1948 through 1952, and by the terms of this lease Ogle was to build a barn sixty feet long, thirty-six feet wide, with concrete foundation, and with a fourteen foot shed on the south side. This lease contract was signed at the home of the appellee, Mrs. W. G. (Rosa Mai) Durley, whose husband witnessed the document and advised his wife it was a good lease.

On January 20, 1950, Mrs. Lucye Farrar (Wilson) Harper entered into a lease with appellant Ogle extending the lease contract of February 7, 1948 for an additional five years, beginning on January 1, 1953, in which lease Ogle contracted to keep the tenant houses and dwelling house in as good state of repairs as of the date of the lease. Mrs. Harper paid to Mrs. Durley one-half of the rents, less taxes, for the five years 1948 through 1952.

On January 21, 1953, the appellee, Mrs. W. G. Durley, filed suit in the chancery court against Mrs. Lucye Farrar Wilson Harper and appellant, Harold Ogle. The bill charged that the Featherston Place was a very fertile, productive, and well-improved farm; that the fair

rental value would be not less than $3500, and if reasonable diligence was exercised, it would yield an annual rental of $5,000; that complanant had a right to one-half of the income from said lands under the will of Mrs. Lucy Y. Wilson and that Mrs. Harper was charged with the responsibility to see that said lands were properly managed, preserved, and protected, and was charged with the exercise of reasonable diligence and prudence so that said lands would yield the maximum income; and that the act in making the last mentioned lease was a fraud on the complainant. No facts constituting fraud were alleged, unless it could be inferred from the amount of rent provided for in the lease. The prayer of the bill was for the cancellation of the lease and for a mandatory injunction compelling Mrs. Harper to receive and obtain a fair and reasonable annual rental for said land.

The answer of Harold Ogle, among other things, averred that Mrs. Lucye Farrar Harper had the sole and exclusive control of the farm, with the exclusive right to rent and lease the same, and that the lease to Ogle was valid and Mrs. Durley had no rights except to receive one-half of the rents, whatever the rent might be. Ogle's answer then set up the prior leases under which Ogle averred that he had spent large sums in improving the farms; that the lands were not naturally fertile, and denied that $1500 a year was not a fair and reasonable rent; that there had been no bad management on the part of Mrs. Harper, and denied that Mrs. Harper could have, by the exercise of reasonable diligence, obtained a higher rent, and denied that complainant was entitled to any relief. Ogle's answer made the contention that he had a valid and binding lease for the five-year period beginning January 1, 1953, and contended that complainant was not a proper party to bring the suit for the cancellation of the contract.

Mrs. Lucye Farrar Harper answered, adopting part of the answer of Ogle. Her answer denied that by the exercise of reasonable diligence and prudent business practices the rent for the Featherston Place should be not less than $3500; denied that she had badly managed the farm; and denied that $1500 per year was grossly inadequate, unfair, or unreasonable for said place. She emphatically denied that she had performed any act of any kind that would constitute a fraud on the complainant; and that appellee had accepted one-half the rents from year to year under the lease beginning in 1948 between Ogle and Mrs. Harper, and appellee had thereby approved and acquiesced in the control of the property by Mrs. Harper.

The case was tried during the crop year of 1953. Numerous witnesses were introduced by both parties on the question of what would be a fair rental value of the Featherston Place. Some of the witnesses were of the opinion that $1500 would be a fair rental and some of them were of the opinion that $5000 would be a fair rental. The chancellor held that $3600 would be a reasonable rental for the year 1953. His findings as to the rental value were not manifestly wrong. All of the witnesses heard by the chancellor as to the rental value of the Featherston Place based their opinion on what a reasonable rent would be for 1953 under conditions in 1953, not in January, 1950, when the lease was made. Furthermore, the witnesses for appellee did not take into account the cost of keeping the improvements in repair, as Ogle was required to do under the lease in question.

The proof showed that Mrs. Durley did not know that Mrs. Harper had made the additional five-year lease effective January 1, 1953, until shortly before this suit was filed. The proof shows further that Mrs. Harper had no farming experience and was inexperienced in land values, and never sought the advice of any person qualified to give advice on land or rental values before

entering into the last five-year lease. In other words, she used her own judgment without seeking any advice, and the chancellor could have found that she lacked ordinary skill and judgment in handling the rental transaction.

The lower court rendered an opinion which appears in the record. The court therein found that by the terms of Mrs. Wilson's will the Featherston Place had an *equitable charge* against it in favor of Mrs. Durley for one-half of the net rents; that the will gave constructive notice to the world of such charge; that $3600 would be a reasonable annual rental for the Featherston Place. The final decree then recited that the rental for the last five-year period beginning January 1, 1953, as provided by the lease, was unreasonable and grossly inadequate, "and is a fraud on the *equitable life tenant*, Mrs. W. G. Durley;" that Mrs. Harper was overreached, misled, and persuaded by the said Ogle to enter into said lease; that Mrs. Harper made the last mentioned lease without obtaining independent advice; that a fair annual rent was $3600. The decree cancelled the lease for the five-year term beginning January 1, 1953, and awarded Mrs. Harper a judgment of $3600 for the 1953 rent, and Ogle was ordered to surrender possession of the farm by January 1, 1954. The decree enjoined Mrs. Harper to receive a fair annual rental for the Featherston Place for the years following January 1, 1954.

Appellant Ogle assigns nineteen errors. We find it unnecessary to deal separately with these assignments of error.

 A proper disposition of this case requires that we first determine the nature and kind of right, estate or interest which Mrs. Durley had in the Featherston Place, and the relative rights and duties of T. Webber Wilson and Mrs. Durley under the terms of the will of Mrs. Lucy Y. Wilson relating to the Featherston Place. Mrs. Harper, as life tenant under the will of T. Webber

Wilson, succeeded to the same relationship to Mrs. Durley regarding the Featherston Place as the will of Mrs. Lucy Y. Wilson created between T. Webber Wilson and Mrs. Durley. The chancellor, in his oral opinion, called the interest of Mrs. Durley "an equitable charge." The decree referred to Mrs. Durley as the "equitable life tenant." The will of Mrs. Lucy Y. Wilson gave the Featherston Place to T. Webber Wilson in fee simple with every indicia of ownership; later a codicil was added to her will in which she provided "after all taxes are paid I want Webber to divide equally the income of the farm with Rosa Mai Durley, his sister, as long as she lives." ██ Generally a devise of the income from property for the life of the devisee is in effect a devise of the property itself for life. 33 Am. Jur., Life Estates, Remainders, etc., Par. 11, p. 471; 16 Am. & Eng. Ency. of Law 148. But this rule does not apply where a contrary intention appears from the instrument creating the estate. See Anno., 174 A. L. R. 321. There was a clear devise of the land to T. Webber Wilson. There was not a devise of the rents, but merely a direction to the devisee to divide the income with Mrs. Durley. We are of the opinion that Mrs. Durley did not acquire a life estate, legal or equitable, in the Featherston Place. Jordan, et al. v. Walker, (Ala.) 77 So. 838; 57 Am. Jur., Wills, Sec. 1195, p. 785.

In Jordan, et al v. Walker, supra, the testator devised his land to his wife "during her natural life" and then provided, "it is my will that said children shall share equally with my said wife in the rents and benefits of said lands during the life of my said wife." It was contended in that case that the life estate of the widow was cut down so as to include the children as tenants in common of a life estate with the widow. The Court held:

 ██ "We are of the opinion that by this clause of the will the testator intended that his widow should have full dominion and control of the homestead tract during

her life, and while the children, by the concluding sentence of the clause, might have such an interest in the rents and profits of the place as to create a charge thereon for that purpose, yet it does not appear with reasonable certainty that by such gift to them the testator intended to cut down the life estate to the widow and deprive her of the right of full dominion and control over the land.''

We are of the opinion that the will of Mrs. Lucy Y. Wilson created an equitable charge on the Featherston Place that Mrs. Durley be paid by T. Webber Wilson one-half of the income therefrom, after payment of taxes; and whether this equitable charge was upon the land itself or merely upon the income is not at issue in this case. ''Where land is specifically devised, and the testator further directs that the rents and profits shall be applied for a limited period to the maintenance of a third person, this will create a charge upon the land.'' 19 Am. & Eng. Ency. of Law 1361.

The distinction between a trust and an equitable charge is generally more difficult to resolve than whether the gift is a life estate or an equitable charge.

''If a testator devises or bequeaths property subject to the payment of certain sums of money to third persons, he thereby creates an equitable charge, not a trust.'' 1 Scott on Trusts, Sec. 10, p. 71. While there are similarities between an equitable charge and a trust, the character of the relation is different. An equitable charge, unlike a trust, does not involve a fiduciary relation; and the devisee and the person in whose favor the equitable charge is created may deal with each other at arm's length. 1 Scott on Trusts, Sec. 10.4, p. 76. The distinction between an equitable charge and a trust is dealt with in considerable detail in 1 Bogert, Trusts and Trustees, Sec. 31, wherein it is stated:

"Probably the most important distinction lies in the absence of the fiduciary element in the equitable charge. There is not that degree of intimacy and representation in the charge which places upon the holder subject to the charge any special duties toward the beneficiary of the charge. They are free to contract with each other; the charge may be sold to one against whose property it runs; and there is no burden on the buyer to prove good faith or full disclosure. They stand to each other as debtor and secured creditor. The burden of proving actual fraud is on the beneficiary of the charge, if he claims his opponent has taken advantage of him."

This Court has recognized the common law charge in several cases. Crossett, et al v. Clements, (Miss.) 7 So. 207; Roberts v. Burwell, et al, 117 Miss. 451, 78 So. 357, wherein it was held that provision in a will that each devisee of land deliver to testator's widow one bale of cotton annually was a charge on the land and not a trust within the meaning of the statutes of limitations.

Appellee relies on the cases of Hassell v. Hassell, 156 Miss. 885, 127 So. 581, and Yeates v. Box, 198 Miss. 602, 22 So. 2d 411. These cases are clearly distinguishable from the case now before the Court. In the Hassell case, the will created an express trust, and the authorities hold that words of trust are important in determining whether the will created a charge or a trust. Dial v. Dial, 378 Ill. 276, 38 N. E. 2d 43. The Yeates case was one where the trustees actually qualified and one of the purposes of the suit was to terminate the trust. While words of trust were not there used in the will, the fiduciary relationship was present and the manifest intent of the testator was to create a trust.

In McNeese v. Conwill, 177 Miss. 427, 170 So. 678, the wife of the testator was insane and the will gave her a life estate with remainder over to a nephew, Frank Finney, and his wife, attached to which devise was an expression that, "I believe Frank Finney and his wife

Maudie Finney will take care of my wife in her declining years.'' The Court held that ''the will created a trust in favor of the wife in and upon the devised land and as against the ultimate devisees.'' The issue in that case did not involve the distinction between a trust and an equitable charge. The sole question there was whether the guardian of Bettie Finney's estate was entitled to have the lands sold to pay for her support, and this turned upon whether the precatory words employed by the testator created a charge on the lands devised. Sometimes the decisions fail to distinguish between a trust and a charge on land; and it would appear that such failure often results from the absence of factors making the distinction necessary. The McNeese case is consistent with what we hold as indicated by the ultimate holding in that case as follows:

''We are therefore of the opinion that the devised property must stand charged with the monetary value, measured according to legal standards, of the care which should have been devoted to the wife for that period from the time when the ultimate devisees ceased to care for her down to her death;. . .''

The codicil to Mrs. Wilson's will charged the devisee with the duty to divide equally the income with Mrs. Durley — nothing more. We may not presume her intent was to burden her son, T. Webber Wilson, with the rather onerous role of a trustee, with the resulting duties and responsibilities required of a fiduciary. No words of trust were employed. It is not manifest or reasonably inferable that the testator intended to create a trust in the sense of making the devisee a fiduciary, and to so hold would be to press too far the words of the codicil.

From what we have said, it follows that T. Webber Wilson took title to the Featherston Place in fee, subject only to the division of the income after taxes with his sister, Mrs. Durley, as long as she lives, and Mrs. Durley's interest was an equitable charge, and not

a trust or a life estate. Mrs. Harper, by the will of T. Webber Wilson, took a life estate, subject to the equitable charge placed on the land by the will of Mrs. Lucy Y. Wilson. ██ From the authorities, we conclude that Mrs. Harper had full control and dominion over the Featherston Place during her natural life, with the right to lease the property without the burden being on her, Mrs. Harper, to prove good faith; but, on the contrary, the burden was on Mrs. Durley, as beneficiary of the charge, to prove actual fraud if she claims Mrs. Harper has taken advantage of her.

██ Thus we arrive at the conclusion that appellant Ogle was not charged with constructive notice by the will of Mrs. Wilson that Mrs. Harper's right to lease the Featherston Place was restricted or involved any fiduciary relationship between Mrs. Harper, the life tenant, and Mrs. Durley, the beneficiary of the charge.

██ There was no proof of fraud or bad faith on the part of Ogle or Mrs. Harper in entering into the lease in question, nor is there any contention made that there was a mistake of material fact that might invalidate the lease. The lease was for a valuable and substantial consideration. The law will not weigh the quantum of the consideration in a contract, and so long as it is something of real value in the eyes of the law it is sufficient. 17 C. J. S., Contracts, Sec. 127.

For the reasons stated, we hold that the lease contract between Mrs. Harper and appellant dated January, 1950 for a five-year term beginning January 1, 1953, was valid and binding on the parties. The bill of complaint should have been dismissed. We reverse the case and render judgment here for the appellant.

Reversed and judgment here for appellant.

*McGehee, C. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.