*In re* ESTATE OF FRANK KROTZ, Deceased (Norma Dowdle, Plaintiff-Appellee and Cross-Appellant, v. Edward Krotz, Executor, Defendant-Appellant and Cross-Appellee).

Fourth District    No. 4—87—0127

Opinion filed April 14, 1988.

Asher O. Geisler and Gary F. Geisler, both of Geisler, Waks & Geisler, of Decatur, for appellant.

Ralph Turner, of Luedtke, Hartweg & Turner, of Bloomington, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Defendant Edward Krotz, executor of the estate of his father, Frank Krotz, decedent, appeals from an order of the circuit court of McLean County holding that decedent's will was ambiguous and in need of construction and further holding that certain shares of stock of decedent should pass according to the residuary clause of the will.

Plaintiff Norma Dowdle, a daughter of decedent, cross-appeals from the award of attorney fees.

According to the record, the last will of Frank Krotz provided that his wife should have the right to reside in his residence and to use the tangible personal property in the residence until her death or remarriage or permanent vacation of the premises, after which the residence was to be sold and the proceeds divided equally among his three children. Decedent made specific bequests of numerous items of personalty, including coins, tools, and sporting equipment, and provided for each of his 16 grandchildren to receive $1,000. Decedent bequeathed all his stock in F. Krotz Food Company to his son Edward, with no restrictions. The provision which is being litigated is as follows:

> "ITEM VII. I bequeath all my stock in BLOOMINGTON EAST GATE PLAZA, INC., a corporation, to my son, EDWARD KROTZ, subject to the provision that for two (2) years after my death, he does not dispose of said stock nor the assets in said corporation, and that from that portion of the net rental monies that I would have received (net rental monies being defined as after the payment of necessary maintenance, taxes, utilities, insurance and other expenses that are not paid by the Lessee of the premises) shall be divided equally amongst my three (3) children, EDWARD KROTZ, FRANCES SKAPEK, and NORMA DOWDLE. Prior to making this distribution to my said three children, in the event there is insufficient cash to pay the legacies in Item V Par. J above (the $1,000 to each of my grandchildren living at my death), then said net rental monies shall be used first to satisfy this bequest and the balance then distributed to my three children named above, in equal shares."

Additional provisions included a residuary paragraph which provided that the residue of decedent's estate should be divided equally among his three children, *per stirpes*; a provision which disinherited any of his children who contest any provision of the will; and a final paragraph, as follows:

> "In the past few years, I have made several gifts to my children or grandchildren, and I want it specifically understood that any gifts that I have made prior to my death are in addition to the gifts made in this Will."

It appears from the record that decedent owned 4,800 shares of stock in the Bloomington Eastgate Plaza, Inc., that he controlled an additional 500 shares as trustee, and that the remaining 4,700 shares

were owned by his son, Edward Krotz. According to the terms of the trust, the 500 shares passed to Edward Krotz immediately upon the death of decedent. It also appears from the record that decedent's daughter, Frances Skapek, sold her interest in decedent's estate to her brother, Edward Krotz, and, hence, is not a party to this litigation.

Norma Dowdle filed a complaint for construction of will in which she alleged, *inter alia*, that Item VII of decedent's will made a conditional bequest of stock in Bloomington Eastgate Plaza, Inc., to Edward Krotz as an implied trustee and did not make a complete disposition of the stock from the implied trust so that decedent's remaining interest in the stock passed under the residuary clause of the will. Plaintiff further alleged that the provision for disposition of shares of stock in Bloomington Eastgate Plaza, Inc., and the provision for distribution of "net rental monies" from operations of the corporation are both susceptible to conflicting interpretations.

Following an evidentiary hearing, the trial court ruled that decedent's will is ambiguous and must be construed by the court and that the will did not give Edward Krotz "either an outright fee simple interest or a fee simple interest subject to a charge, lien or condition in the Bloomington Eastgate Plaza, Inc. shares." The court also said, "In order to give effect to the meaning of the restrictions in Item VII, and honor the testator's intent, the court finds the language of the will created an implied trust for the benefit of the family members and placed fiduciary responsibilities on Edward Krotz as trustee." The court then held that Item VII did not make a complete disposition of decedent's interest in the shares and, therefore, that the shares must pass under the residuary clause of the will to the three children equally. Finally, the court found that the phrase "net rental monies" as used in Item VII should be determined before depreciation and interest are deducted from gross rental income. The trial court awarded to Norma Dowdle's attorney fees of $11,000, based upon actual work performed at the rate of $60 per hour, and denied an additional $37,000 in fees which included the contingent fee which Norma Dowdle had agreed to pay.

Defendant asserts three issues for determination on appeal: (1) whether decedent's will was ambiguous and in need of construction; (2) whether the will created an implied trust; (3) whether "net rental monies" is to be computed before deducting depreciation and interest. On cross-appeal plaintiff claims the attorney's fee award was erroneous.

▪ Defendant first contends that the trial court erred when it

found that the will is ambiguous and in need of construction. Before undertaking to construe a disputed provision in a will, the trial court must find an ambiguity giving rise to doubt or uncertainty as to the rights and interests of the parties arising under such wills. (*Peck v. Drennan* (1951), 411 Ill. 31, 103 N.E.2d 63.) Defendant, on the other hand, contends that the language of Item VII of the will is clear and unambiguous, with it plainly being the decedent's intent to give the shares of stock to Edward Krotz outright subject to a restriction not to sell the shares for two years and subject to an equitable charge as to the net rental income, which Edward is to share equally with his two sisters during the two-year period.

■ Norma argues that the language of Item VII is ambiguous because there are four possible property interests created (fee simple, fee simple subject to a charge or lien, fee simple subject to a trust, or implied trust) and also that the fact that an issue of construction was raised is sufficient to show an ambiguity. We note that the "fee simple" property interests suggested by Norma are interests in real estate, not personalty, and thus are technically not applicable to ownership of shares of corporate stock. Additionally, we find controlling here the rule applied in *Peck v. Drennan*: "The court never acquires jurisdiction to construe a will merely by allegation that a question requiring construction exists, when the record shows there is no such question." (411 Ill. at 36, 103 N.E.2d at 66.) Thus, the fact that Norma *argues* that more than one construction of the will is possible is not sufficient to establish that an ambiguity exists.

■ We find the language is clear and certain and that no ambiguity exists. Decedent obviously intended his son to have ownership of the shares subject to sharing two years' income with decedent's daughters, after the specific bequests of $1,000 to each grandchild were paid, and subject to a limitation on disposing of the shares for two years. It is not necessary to find an implied trust of indefinite duration in order to give effect to this language.

■ The attorney for Norma Dowdle argued before this court that the testimony of the scrivener of the disputed will supports a finding of ambiguity and also that the scrivener discussed with decedent what he wanted to do. These statements are contradicted by the report of proceedings. The attorney who drafted the will testified that he could not recall his discussions with decedent and that they did not discuss the difference between putting a charge or lien on the shares for payment of net rental monies for two years as opposed to putting the stock in trust. We see nothing in this testimony to support a finding of ambiguity.

■ Norma contends that an implied trust is the only construction which gives meaning to all the provisions of the will. However, she also argues that, under her theory, the testator did not provide for disposition of the trust corpus and, therefore, the shares must pass under the residuary clause of the will. This argument advanced by Norma would abrogate decedent's plainly expressed intent to give all the shares to Edward. A court may not rewrite a will according to its own ideas of what is fair.

In *Dial v. Dial* (1941), 378 Ill. 276, 38 N.E.2d 43, the decedent gave one half of his real estate to his son, subject to the life estate of his wife, and his will stated that he gave the property to his son " 'as trustee for my daughter *** who is afflicted, and I enjoin upon him to see that she has proper care and attention as long as she lives.' " (378 Ill. at 278.) The court considered whether this language created a trust or an equitable charge, noting that one who holds land subject to an equitable charge can transfer title subject to the charge while a trustee cannot sell unless expressly authorized. An equitable charge is described as a lien which is the legatee's security for payment of the legacy. In *Dial v. Dial*, the court found a trust, and we would agree. Not only did the decedent expressly describe his son as "trustee" of the real estate involved, but he also required him to provide proper care and attention to an afflicted daughter during her lifetime. A fiduciary relationship of indefinite duration and with multiple concerns was clearly intended. Such is not true in the case at bar. The shares of stock were given to Edward Krotz outright, subject to a charge for two-thirds of the income for two years and for the specific bequests to the grandchildren if there is not sufficient cash in the estate otherwise.

■ Other cases relied upon by Norma are clearly distinguishable. In *Comstock v. Redmond* (1911), 252 Ill. 522, 96 N.E. 1073, the testator gave his property to his three sons, subject to certain specified benefits for his three daughters, for their lifetimes and afterwards for their heirs. There was an express provision for successor trustees, and the court found that the sons were trustees for one-half the estate for the benefit of the daughters. In *Golstein v. Handley* (1945), 390 Ill. 118, 60 N.E.2d 851, the testator provided for his children to receive various percentages of his estate to be paid in monthly installments of varying amounts. This was held to amount to a trust. In both cases, the testator intended long-term benefits to be paid to some or all of his children. In neither case could the charge be considered an equitable lien. Here, however, Frank Krotz provided for two years' rental income to be used to create a fund to assure payment of

the bequests to the grandchildren and to be divided among his three children. Such a limitation does not resemble the trusts created in the cases relied upon by Norma. We conclude that, even if Item VII were ambiguous, the trial court erred in finding an implied trust.

■ Defendant next argues that the trial court erred in ruling that the amount of the "net rental monies" to be divided between decedent's three children was to be calculated before depreciation and interest were deducted. The decedent expressly stated in Item VII that he meant "that portion of the net rental monies I would have received." The phrase "net rental monies I would have received" obviously means the amount of cash derived from decedent's rental income which would be available for use.

■ We agree with the ruling of the trial court that the language of the will did not intend that *depreciation* be deducted from the gross rental income in arriving at "net rental monies" since depreciation is an accounting adjustment which does not decrease the cash available to the lessor. However, a different result should be reached as to the *interest* expense since the interest payable by the lessor is not merely an accounting adjustment but represents a cash expenditure which would, of course, reduce the amount of cash decedent would receive. Accordingly, we hold that the trial court erred in refusing to deduct interest expense before determining the amount of "net rental monies" under Item VII of the will. Upon remand, "net rental monies" shall be redetermined in accordance with our holding.

■ The last issue concerns the award of attorney fees of $11,000 to plaintiff Norma Dowdle. On cross-appeal plaintiff contends the trial court erred in failing to award an additional amount, including $33,000 which she had contracted to pay to her attorney as a contingent fee in the event her claim was successful. We have decided that the court erred when it ruled in favor of Norma; consequently, any issue concerning a contingent fee has become moot. Since we are reversing the judgment of the trial court on the merits, we also reverse the award of attorney fees, and we remand this cause to the trial court for disposition in accord with this opinion and for redetermination of any award of attorney fees to which the parties may be entitled.

Reversed and remanded.

WOMBACHER and HEIPLE, JJ., concur.