JOHN CAIN AND MARY CAIN, HIS WIFE, *vs.* MAR-
GARET TIEMANN MILLER, FORMERLY THE WIFE
OF HENRY TIEMANN, DECEASED, AND ELWOOD
FRANK TIEMANN, ROYDEN TIEMANN
AND CHARLES TIEMANN, INFANT CHIL-
DREN OF HENRY TIEMANN, DECEASED, BY
THEIR MOTHER AND NEXT FRIEND,
MARGARET TIEMANN MILLER.

*Administration: Orphans' Court; jurisdiction; domicil of dece-*
*dent; sale of land in another county. Charges on*
*land; overpayments by administrators.*

Administration upon a decedent's estate can only be granted
by the Orphans' Court of the county where was the dece-
dent's domicil at the time of his death.          p. 48

The claim of an administrator for overpayments made by him
in the settlement of the ordinary debts of the decedent do
not constitute a charge against his estate.          p. 51

To such claims, sec. 83 of Art. 16, requiring proceedings for
the enforcement of charges or liens on land to be instituted
in the county where the land lies does not apply.    pp. 49-51

The Orphans' Court under sec. 290 of Art 93 has jurisdiction
to decree a sale of the land of the decedent for the payment
of the same, although the lands may lie in a different county
*provided* their appraised value does not exceed $2,500.  p. 48

A charge upon land may be a mortgage or a judgment made a
lien by statute, or it may be effected by the act of a testator
for the payment of a debt; or in bankruptcy cases a charge
upon land may have reference to confession of judgments,
or some form of priority given by the creditor to one or
more of his creditors.          p. 50

*Decided December 8th, 1911.*

Appeal from the Superior Court of Baltimore City. (ELLIOTT, J.).

The cause was argued before BOYD, C. J., PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*S. S. Field* (with whom was *Joseph L. McAllister* on the brief), for the appellants.

*Robert F. Leach, Jr.*, for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

The record in this case contains three bills of exceptions, two of which were reserved upon the exclusion of testimony, and the third was to the rulings of the trial Court on the prayers. All three turn upon one and the same question of law. The facts, which are comparatively simple, are as follows:

At the time of his death Henry Tiemann was a resident of Baltimore City; he left surviving him a widow and three infant children. His estate consisted of a small stock in a store which he had been carrying on, and a small piece of real estate in Baltimore county. Administration was taken out in the Orphans' Court of Baltimore City, and properly so, as his home or domicil had been in the city, and letters of administration granted to his wife and Charles A. Briscoe. The administrators returned an inventory of the personal estate, and upon application of the administrators his stock in trade, which comprised the entire inventory, was ordered sold and was sold for the sum of $100. Later the administrators passed an account in the Orphans' Court, which showed that the cost of administration, together with the debts due by the deceased at the time of his death, and which had been paid or secured to be paid by the administrators, amounted to $850.08, and that therefore the administrators had over-paid the estate to the extent of $750.08. Thereupon the administrators applied to the Orphans' Court for

a sale of the real estate of the deceased, upon which petition a citation was issued for the infant children of Henry Tiemann. They were duly summoned, a guardian *ad litem* appointed for them, and an answer filed by the guardian *ad litem;* subsequently the Court by its order appointed Charles A. Briscoe, one of the administrators, as trustee to make the sale, the appraisement of the real estate by the appraisers appointed by the Orphans' Court having returned its value as $2,000. These proceedings were in accordance with Article 93, sections 290, 291 and 292 of the Code. The trustee thus appointed subsequently reported the property sold, for the sum of $2,900—the sale was duly ratified, the purchase money paid and a deed executed by the trustee to the purchasers of the property. About two years and a half later, Mr. Tiemann's widow, who had remarried, together with the three infant children of Mr. Tiemann instituted an action of ejectment in the Circuit Court of Baltimore County to recover the property so sold to John and Mary Cain, the appellants in this case.

The trial Court, upon the objection of the plaintiffs in the ejectment suit, refused to admit in evidence the proceedings had in the Orphans' Court by which Mr. Briscoe was appointed trustee, and also refused to admit in evidence the deed from Mr. Briscoe, as trustee, to Mr. and Mrs. Cain, and by its rulings upon the prayers instructed the jury that Mrs. Margaret Tiemann Miller and the children of Henry Tiemann were entitled as heirs to recover the property. This action of the trial Court was based upon the theory that the Orphans' Court was without any jurisdiction whatever to authorize a sale of this real estate situate in Baltimore county, and therefore that no title could be passed to any purchaser by such a proceeding as had been had and a sale made thereunder.

Stated in a different form, the determination of this case raises the question of the power of the Orphans' Court to authorize and order a sale of real estate of an intestate, when such real estate is located outside of the city or county from that in which the letters of administration have been granted.

Article 93, section 290 of the Code vests the Orphans' Courts of this State with concurrent jurisdiction with Courts of equity to authorize and direct the sales of real estate of intestates, where the appraised value of such real estate does not exceed the sum of $2,500—and in *Simpson* v. *Bailey,* 80 Md. 422, this Court in construing the same section said, that the power of the Orphans' Court was concurrent "with the Circuit Court to decree the sale of the real esate of intestates *in all cases* where the value of the real estate does not exceed $2,500."

The language of the section and the construction thus put upon it by this Court has made the test of jurisdiction the amount of the appraisement, not the location of the land. That which undoubtedly controlled the lower Court in its action was the phraseology of the statute "Shall have concurrent jurisdiction with the several Circuit Courts of this State," for the reason that when the jurisdiction of the Circuit Court is examined, as contained in Article 16, section 83, it will be found that by the proviso contained in that section, "all proceedings for any partition of real estate, to foreclose mortgages on lands, or to sell lands under a mortgage, or to enforce any *charge* or lien on the same shall be instituted in the Court of the county or the City of Baltimore where such lands lie," thus making the location, and not the appraised value, the test of jurisdiction in the enumerated cases. It was not contended in this case that the proceedings in the Orphans' Court were for the purposes of the partition of real estate, or to foreclose a mortgage on land, or to sell land under the mortgage, but the appellee does insist that it was an attempt to enforce a charge or lien on the same, and that therefore the proceeding must be had in Baltimore county. It is perfectly evident that no administration of Henry Tiemann's estate could properly have been granted by the Orphans' Court of Baltimore County, since that was not his domicil at the time of his death. The appellees are therefore forced to the position, that for the purpose of settlement of this estate it was necessary, first, to have the admin-

istration on the personal estate in the City of Baltimore, and thereafter, go into the Circuit Court for Baltimore County, in equity, in order to perfect any title to the real estate there situate, which it might be desired to sell.

When the act was first passed which gave to the Orphans' Court jurisdiction to sell the real estate of decedents in cases where its appraised value was less than $2,500 the proviso which limits the powers of the equity Courts did not exist, and therefore under the law as it then stood, there could be no question whatever but that the Orphans' Court was vested with ample power to direct the sale of real estate of a less appraised value than $2,500, and thus have the entire estate settled in a single forum, and not compel small estates to bear the burdens of dual proceedings for the purpose of a settlement. The argument, however, is that when in 1870 the Legislature passed the act, which by its terms was amendatory of and only amendatory of the jurisdiction of equity Courts, that it operated to impliedly materially change the extent of the jurisdiction of the Orphans' Courts. With this contention we find it impossible to agree.

While not bearing directly upon the point, the provisions of the Code for the collection of the collateral inheritance tax afford some guide as to the legislative view of the extent of modification which had been made, and as late as 1904, we find the Legislature when revising Article 81, section 129, in terms empowering an executor or administrator to sell real estate, where it is necessary for the purposes of the payment of the collateral inheritance tax; and in the case of an administrator this it manifestly could not do, if he was limited by the statute so that the Orphans' Court could confer upon him no power of sale in another county or the City of Baltimore. Nor can the position of the appellees be sustained upon the theory that the sale attempted to be made in this case came within the scope of the proviso to be found in Article 16, section 83. The only claim upon which that is based, is that this was a sale of land for the purpose of enforcing a charge upon the estate of Henry Tiemann. The

word "charge" is one of very large signification, and is applied in various ways. Under the English law a charge on land for the payment of debts was effected by the act of a testator, by provision contained in his will, either expressly devoting the land to the satisfaction of his debts, or devising them subject to the payment of such debts. *Warley* v. *Warley,* cited in 2 *Words & Phrases,* page 1068. In bankruptcy cases it has been construed to have reference to confessed judgments, or some form of priority given by a debtor to one of his creditors, and in *Bank* v. *Elliott,* 47 L. R. A. 742, 82 Am. St. Reps. 268, the word "charge" as used in the statute under discussion in that case, was held to signify a lien or encumbrance or claim which the purchaser of property may have, and for which, at common law or in equity he would be entitled to hold the lands as security, and to the satisfaction of which a Court of equity would condemn them. In *Black's Law Dictionary,* 2nd ed., 191, a "charge" is said in testamentary law to be a responsibility or liability imposed by the testator upon a devisee personally or upon the land devised. This would apparently restrict it to some act of a testator and thus give the term no applicability in a case of intestacy, that however is probably too restrictive; thus a mortgage upon land or a judgment, which by statute is made a lien upon land should be embraced within the definition of the term "charge," and would of course apply equally in a case of testacy or intestacy. The account of the administrators as offered in evidence in this case did not show any judgment or claim paid by them of a higher order than a promissory note. It is true there was a mortgage upon this real estate; but the proceeding instituted was not by way of foreclosure of the mortgage, nor for the purpose of its foreclosure; it was a proceeding to reimburse the administrators for moneys which they had paid out in settlement of the ordinary debts of the decedent. None of these had been reduced to judgments, and therefore, could not constitute any lien or charge upon the land, and were all of them, unless it be the expenses of administration, subject to be

disputed by the administrators. Even if it be assumed that by virtue of the payment of these debts the administrators became subrogated to the rights of the original creditors, they still would not be in a position where they held a "charge" upon the land, and unless they did so hold a "charge" or lien upon the land the proviso of the section of the Code had no application, and therefore the jurisdiction of the Orphans' Court was ample. Had the proceeding been one instituted by the mortgagee as a means of collecting his mortgage, there can be no question that the proceeding should have been had in Baltimore county, or if the creditors had received but a dividend on their claims under the administration granted by the Orphans' Court of Baltimore City, and desired to proceed to collect the balance, and to that end to subject the real estate to the payment of their claims, the Circuit Court of Baltimore County would have been the proper jurisdiction for them to have invoked, but when as in the present case, the moving parties were the administrators of the decedent, and as appears by their petition the purpose of their application was in furtherance of their administration, we can not but conclude that the jurisdiction of the Orphans' Court of Baltimore City was all sufficient to authorize and direct the sale of the real estate of the deceased when the appraised value of it was less than $2,500.

It follows from what has been said that the Court below erred in refusing to admit in evidence the proceedings in the Orphans' Court of Baltimore City and the deed from Charles A. Briscoe, trustee, to Mr. and Mrs. Cain, and that evidence being admitted, the Court erred in granting the prayer of the plaintiff, and refusing the second prayer of the defendant.

It was of course error in the first prayer of the plaintiff to have included Mrs. Miller as one of the heirs of Henry Tiemann, but this is unnecessary to discuss because of the more important ground already considered, which is conclusive of the case.

There is now ample provision under the law in cases where an equity Court is empowered to sell lands which lie in another county for taking a transcript of the more important proceedings in the case and making them of record in the county where the land sold is located, and it is both unfortunate and anomalous that no such provision has been made with respect to lands, or interests in lands, which may be sold in pursuance of an order of the Orphans' Court. It is to be desired not merely that there may be a continuity of the paper record of the title in the county where the land may be situate, but may become most important in cases where by the terms of a will an executor may be clothed with broad powers of sale, which when exercised must be reported to the Court for ratification which issued his letters, and yet that Court may be located in some county far removed from the one where the land is situate. The correction of this condition is not one which can be made by the Courts, but can result only from legislative enactment.

> *Judgment reversed without a new trial, costs above and below to be paid by the appellee, Margaret T. Miller.*