## HARDGROVE, GUARDIAN, Etc. *v.* HARDGROVE, et al.

[No. 448, September Term, 1964.]

*Decided December 15, 1965.*

The cause was argued before PRESCOTT, C. J., and HAM-MOND, HORNEY, OPPENHEIMER and McWILLIAMS, JJ.

*Hugh J. Monoghan, II,* with whom were *Charlotte W. Main* and *Monoghan & Main* on the brief, for appellant.

*Roger A. Clapp,* with whom were *Hinkley & Singley* on the brief, for William H. Hardgrove, et ux., part of appellees; no brief and no appearance for other appellees.

HORNEY, J., delivered the opinion of the Court.

In this equity proceeding for the construction of the last will and testament of Berta Hardgrove, deceased, the principal question presented is whether the legacies given and bequeathed by the testatrix to her grandson and granddaughter created a charge on real property, a trust of the property, or neither a charge nor a trust.

The testatrix executed the will on July 21, 1954. She died on March 9, 1955. The will was admitted to probate on March 24, 1955, by the Orphans' Court of Baltimore City and the executor named therein qualified as such on the same day. The testatrix was survived by two sons, William H. Hardgrove (William) and Lyle W. Hardgrove (Lyle), and two grandchildren, Bud Weldon Hardgrove (Bud) and Bertha Ann Hardgrove (Bertha Ann), the minor children of Lyle by a former wife from whom he was divorced. William and his wife Virginia were the plaintiffs below and Lyle and his wife Edna and his minor children Bud and Bertha Ann were the defendants. On appeal, Lyle, as guardian of his children, is the appellant, and William and his wife and Lyle and his wife are the appellees. Since the legal position taken by Lyle and his wife in regard to the construction of the will was different from that taken on behalf of Lyle as guardian for his children, the divergent interests of the parties were represented below as well as here by separate solicitors. The real property, which is the subject of this controversy is situate in Baltimore City, is located on the west side of Saint Paul Street between Pleasant and Mulberry Streets, is known as 330 Saint Paul Street and is presently improved by a large house, which has twenty-five rentable rooms, five apartments and one store. Although the will was prepared by an attorney at law in the usual form, the lack of a correlated testamentary plan makes it desirable to reassemble the numerous items pertaining to the property in question. The remaining items will be stated in such order, numerical or otherwise, as may be appropriate.

The first item of the will (concerning the sale of two lots in St. Petersburg, Florida) was followed by the residuary clause which, though it was not mentioned, concerns the Saint Paul Street property. That clause, designated as the *second* item in the will, provides as follows:

> "All the rest, residue and remainder of my Estate and Property, Real, Personal, Mixed, of whatsoever kind and wheresoever situate, I give, devise and bequeath unto my two Sons, William H. Hardgrove and Lyle W. Hardgrove, in equal shares subject, however, to the directions and limitations herein set out and defined."

The first "limitation" with respect to the property in question was stated in the *third* item, which reads:

> "It is my desire that my said two Sons do not sell my Rooming House Property, 330 Saint Paul Street, Baltimore, Maryland, until at least Twenty Years after my death."

The testatrix reiterated her desire with respect to this property in a part of the *seventeenth* item, when, in elaborating on this "limitation," she said:

> "In the Third Item of this my last Will and Testament, I have directed that my property 330 Saint Paul Street, Baltimore, Maryland, be not sold until at least twenty years after my death and I now direct that none of the contents of said property are to be sold until at least twenty years after my death, same to be used in the conduct of the rooming and apartment house business therein. * * *."

The *fourth* item provided that William and Virginia (from and after the death of the testatrix) should have, free of rent, the right to occupy and use the rooms and facilities formerly occupied and used by the testatrix in the Saint Paul Street property. But the right so given was revoked by the *eighteenth* item in the event that William (after completion of administration of estate) should refuse, or for any reason should thereafter fail, to manage and continue the conduct of the rooming and apartment house business.

The *fifth* item (upon completion of administration of estate) bequeathed William one-half of the net income from the property. The *sixth* item directed that the remaining one-half of net income should be divided into three parts: one-third thereof was bequeathed to Lyle; one-third was to be deposited in a savings bank in the name of Bud "to be used as far as it may be necessary to do so for his education"; and the remaining one-third was to be deposited in the name of Bertha Ann with an identical restriction as to its use for her education. The last clause of the *fourteenth* item directed the executor to also distribute the unexpended balance of the rent money collected during ad-

ministration "to the persons and in the proportions named and designated in the fifth and sixth items" of the will.

As to all moneys deposited in the name of the grandson and granddaughter, the testatrix stated in the *tenth* and *eleventh* items that:

"* * * it is my desire and I so direct that the same may be drawn to be used for his [her] education, but that the balance of principal standing to his [her] credit, any additions thereto and accruing interest thereupon cannot be withdrawn from Bank by the said Bud [Bertha Ann] until he [she] attains the age of twenty-five years."

The *seventh* item provided that no improvements should be made to the property without the approval of both William and Lyle and the last clause of the *sixteenth* item directed that such improvements as were made should be paid for out of the rent money.

The *sixteenth* item named and designated William "to manage and look after" the rooming and apartment house business after the administration of the personal estate had been completed, and, besides specifying in detail how he was to manage the business and what was to be paid out of the receipts from rent and what was not to be deducted therefrom, stipulated that William, in addition to the rent free accommodations provided in the fourth item, should receive a commission of not more than two per cent of the gross rents as extra compensation for services rendered in operating the business. The last clause of the *seventeenth* item further provided that title to all articles which were replaced pursuant to directions in the sixteenth item, as well as the replacements of mattresses, furniture, et cetera, in the rented rooms should be taken in the name of William and Lyle.

The *eighth* item provided that in the event William should predecease Virginia (and the property had not been sold), the interest therein of William, as set out in the second and fifth items, should be divided into two equal parts (both as to income and principal) : one part was bequeathed and devised to Virginia. The remaining part was further divided into three

parts: one-third was bequeathed and devised to Lyle; one-third was devised to Bud with the income therefrom to be deposited in bank subject to the same restrictions as to withdrawal set forth in the sixth and tenth items; and the remaining one-third was devised to Bertha Ann with the income therefrom to be deposited in bank subject to the same restrictions as to withdrawal set forth in the sixth and eleventh items. It was further provided that if the property were sold prior to the death of William the eighth item was to be null and void and of no effect; and that if Virginia should predecease William the item was to be null and void as to her.

The *ninth* item provided that upon the death of Lyle, provided the property had not been sold, then, and in that event, the interest therein of Lyle as set out in the second and sixth items, should be divided into three equal parts (both as to income and principal) : one-third was bequeathed and devised to his widow; one-third was devised to Bud with the income therefrom to be deposited in bank subject to the same restrictions as to withdrawal set forth in the sixth and tenth items; and the remaining one-third was devised to Bertha Ann with the income therefrom to be deposited in bank subject to the same restrictions as to withdrawal set forth in the sixth and eleventh items. It was further provided that if the property had been sold prior to the death of Lyle the ninth item was to be null and void and of no effect.

Of the remaining items, none of which have any bearing on the questions presented by this appeal, the first item directed the sale of the Florida lots (at a price of not less than $4500 as directed by the first clause of the fourteenth item), and the payment of $1000 to each of two named brothers. The twelfth item expressed the desire of the testatrix that Lyle give her stepdaughter (daughter of Lyle's first wife) a business course or send her to some school of higher learning. The fifteenth item appointed the attorney who prepared the will as her executor. And the thirteenth item revoked all prior wills and codicils.

The bill for construction of the will sought the opinion of the court as to whether the *third* and *seventeenth* items created restrictions on the alienation of the fee simple estate in the property which were void as restraints on alienation; as to

whether such items (the *third* and *seventeenth*) created a trust of the property for twenty years after the death of the testatrix; as to whether William was required to deposit portions of the net income from the property for the education of Bud and Bertha Ann until they respectively reached twenty-five years of age; and as to such other matters as might come before the court at the hearing.

Both William and Lyle contended that the provisions of the will restricting a sale of the property for at least twenty years was a restraint on alienation and contrary to public policy and was also repugnant to the absolute estate devised to them by the second item of the will. Lyle and his wife Edna contended that a trust of the property was not created, that William should not be required to deposit further moneys to the credit of Lyle's children and that the property should be sold and the net proceeds divided between William and Lyle. And Bud and Bertha Ann, by their guardian, contended that the restraint on alienation was not void, that a valid trust in their favor was created for twenty years and that the deposits to their credit should be continued until they reach twenty-five years of age when the balance in the respective accounts should be distributed to them.

The testimony taken at the hearing of the case by the chancellor [1] showed that William, with the assistance of his wife Virginia, has managed the property and operated the business and distributed the net income in accordance with the directions and desires expressed in the will of his mother. Apart from these managerial and operational duties William is employed as a civil engineer. His wife is not well and he was not certain how long he would be able to continue looking after the property and business. He expressed a belief that if a good offer were made for the property it would be to the advantage of himself and his brother to sell it. There was testimony that the divorced wife of Lyle (who is the mother of Bud and Bertha Ann) and her daughter by another marriage would be able to manage the property and operate the business if William was

---

1. The chancellor, Wilson K. Barnes, is now an associate judge of this Court.

unable to do so or wanted to stop. There was other testimony that Lyle had taken little interest in his children and that the testatrix was concerned about their welfare. There was also other testimony that the shares of net income belonging to Bud and Bertha Ann were deposited in bank regularly. The amount to the credit of Bud was more than that in the account of Bertha Ann because some of it had been spent for her education. Neither of them finished high school. Bertha Ann completed the seventh grade, had taken music lessons and was interested in taking a course in beauty salon management. The record is silent as to the desires of Bud with respect to further education. He is now in the United States Army. Bertha Ann, who was married in her middle teens, has one child and is now separated from her husband. There was also testimony that twenty years after the death of their grandmother Bud and Bertha Ann would be thirty and twenty-eight years of age respectively.

As to whether the *third* and *seventeenth* items created restrictions on the alienation of the Saint Paul Street property which were void or otherwise repugnant to the devise of the property by the *second* item, the chancellor, who was of the opinion that the restraints imposed on the sale of the property did not contravene any positive rule of law, concluded that this contention was not tenable because the intention of the testatrix, as expressed in her will, was to the contrary.

As to whether the *third* and *seventeenth* items created a trust of the property in favor of the grandchildren of the testatrix for twenty years, the chancellor, after noting at the outset that the words "trust" or "trustee" were not used in the will, concluded that the testatrix did not intend to create a trust. Instead, the chancellor, having decided that the use of the words "it is my desire" (in the *third* item) in connection with the direction that the property be not sold for at least twenty years were precatory and that the use of the words "I have directed" (in the *seventeenth* item) that the property be not sold within the time specified had not changed the meaning of the words used in the third item, was of the opinion that the testatrix did not intend to mandatorily restrain a sale of the property during the twenty year period. The holding of the chancellor is based

on his finding that while the testatrix intended that the property should ultimately be for the benefit of William and Lyle in possession, she wanted to project her rooming and apartment house business for a time into the future—a period of twenty years having been estimated as a practical period of time within which the projection should reasonably continue—in order to provide a home for William, income for him and for Lyle, and funds for the education of Bud and Bertha Ann; and that as a means to such ends, the testatrix created a home charge (by the *fourth* item) in favor of William (and his wife) until he died or ceased to operate the business or until the property was sold and also created executory devises (by the *seventh* and *ninth* items) in the event William or Lyle should die prior to a sale of the property before the expiration of twenty years. As a result of his conclusions, the chancellor further found that William and Lyle, acting together, could sell the fee in the property at any time free and clear of the right of William to occupy and use the premises and (inferentially) the right of Bud and Bertha Ann to receive further shares of income from the property; that if William did not wish to sell and desired to continue to operate the business in compliance with the directions imposed by the will, he could do so until his death since "the decision was William's [and] Lyle could not force a sale"; and that if Lyle died prior to William, the executory bequest and devise to his widow and children was still subject to the home charge in favor of William and any sale of their interests would be subject to the charge.

As to whether William was required to deposit portions of the net income from the property for the education of Bud and Bertha Ann until they respectively reached the age of twenty-five years, the chancellor concluded that William, so long as he managed the property, had to continue depositing the shares of net income due the grandchildren in their respective bank accounts until each of them became twenty-five; that no part of the money in the respective accounts could be withdrawn for any purpose other than to pay the expenses for their education until they respectively arrived at the age stipulated; and that it made no difference that the further education of either of them seemed remote. The holding of the chancellor that the

directions of the *sixth* item, as amplified by the explicit provisions of the *tenth* and *eleventh* items, are effective and must be complied with, was based on his finding that the intention of the testatrix in requiring the making of such deposits was clear and unmistakable.

In concluding his opinion, the chancellor briefly summarized the effect of his interpretation of the will as follows:

> "William may, if he desires, continue to manage the subject property in accordance with the directions in his mother's will so long as he lives. He may cease to manage it at any time, in which event, the home charge and its obligations cease and William and Lyle own the subject property and its contents, as tenants in common, in fee simple, absolute, free of the home charge. When the home charge ceases, either William or Lyle may file a bill to partition the subject property. William and Virginia and Lyle and Edna may at any time convey the full and complete fee simple title to the subject property. If William dies prior to a sale of the subject property and is survived by Virginia, there then is an executory devise in favor of Virginia as to one-half and as to Lyle and his two children as provided in Item Eighth. This executory devise will not arise if the subject property has been sold, and if Virginia has predeceased William. The same comments apply as to Lyle's one-half interest if he dies prior to a sale of the subject property, as provided in Item Ninth. There will be no intestacy, in any event, in view of the provisions of Item Second of the Will."

As summarized below, the chancellor construed the will to mean:

### First

(a) That the testatrix devised the Saint Paul Street property to William and Lyle, as tenants in common, in fee simple, subject to a charge in favor of William, during his life, or so long as he continued to manage the property and operate the business conducted thereon in accordance with the testamentary directions of

the testatrix, to occupy and use the rooms and facilities formerly occupied and used by the testatrix, the charge to cease upon the death of William or at such time as he stops or fails to manage the property and operate the business;

(b) That William, in addition to rent free accommodations in the property for himself and wife and a commission of two per cent of the gross rents as extra compensation for his services in managing the property and operating the business, was bequeathed one-half of the net income from the property and business; and

(c) That Lyle was bequeathed one-third of the remaining net income; Bud was bequeathed one-third thereof to be deposited in a savings bank in his name to be used only for his education until he attains the age of twenty-five years when the balance (plus additions and accrued interest) may be withdrawn by him at will; and Bertha Ann was bequeathed the remaining one-third to be deposited in a savings bank in her name to be used only for her education until she attains the age of twenty-five years when the balance (plus additions and accrued interest) may be withdrawn by her at will.

### Second

(a) That the testatrix did not create a trust of the property for a period of twenty years or more in favor of Bud and Bertha Ann; and

(b) That, subject to the home charge in favor of William, the testatrix did not suspend the power of William and Lyle to sell and convey the property whenever they agreed to do so free and clear of the rights of Bud and Bertha Ann to thereafter receive a part of the income therefrom.

### Third

(a) That if William should die prior to a sale of the property, there is an executory devise in favor of Virginia (provided she survives William) as to William's one-half interest in the property and in favor of Lyle

and his children, Bud and Bertha Ann, as to the other one-half interest; and

(b) That if Lyle should die prior to a sale of the property, there is an executory devise in favor of his widow as to one-third of his one-half interest; in favor of Bud as to a one-third; and in favor of Bertha Ann as to the remaining one-third.

The solution of the problem presented by this appeal is not an easy one. Was it the intention of the testatrix to create a trust, a charge or neither? We agree with the chancellor that the *third* and *seventeenth* items of the will did not create a trust of the property. We think, however, that it was the intention of the testatrix, expressed throughout the will, to create a charge on Lyle's interest in the property in favor of Bud and Bertha Ann for at least twenty years.

While technical words, such as "trust" or "trustee," are not required in order to create a trust under the terms of a will, the intention to create a trust must nevertheless be apparent. *Waesche v. Rizzuto,* 224 Md. 573, 168 A. 2d 871 (1961). But in a case such as this, where there are no words in the will indicating the creation of a trust or the designation of a trustee and where the only income received by the beneficiaries is derived from property devised to a person who exercises no authority over it other than the right to approve or disapprove the making of improvements, the gift of the income did not portend the creation of a trust. See *Boutelle v. Boutelle,* 231 Md. 69, 188 A. 2d 559 (1963).

On the other hand, while it is true that a charge on land is never presumed and the intention to create a charge must be clear or no charge will be created, *Fogle v. Stitely,* 186 Md. 28, 45 A. 2d 630 (1946), it was nevertheless suggested in *Johns v. Stoops,* 5 H. & J. 430 (1822), that when the intention of the testator is clearly implied, a direction that grandchildren be educated out of profits from real property under the direction of his executors is regarded as a charge. See also Miller, *Construction of Wills,* § 302, footnote 10; *Page on Wills* (Bowe-Parker Edition) § 51.6. In *Cain v. Miller,* 117 Md. 45, 82 Atl. 1055 (1911), a charge was said to be a responsibility or lia-

bility imposed by a testator upon a devisee personally or upon the land devised to him. And whether a bequest is a charge on land is said to be a matter of intention in *Ogle v. Tayloe,* 49 Md. 158 (1878). See also *Page on Wills, op. cit.,* § 51.9, where it is said that a bequest may be charged on real property without express words in a will which shows the intention of a testator to make the charge if it is clear from the will taken as a whole and in the light of surrounding circumstances that it was his intention to make such charge. To the same effect, see Miller, *op. cit.,* §§ 302, 304 and Sykes, *Probate Law and Practice,* § 114.

Although neither the direction as to making the deposits in bank (which in reality were bequests of a share of the income to her grandchildren for a term of years) nor the bequest of the right of her son to occupy and use the devised property were referred to in the will as charges on the property, we think that the bequests of income to Bud and Bertha Ann created a charge on Lyle's interest in the property in their favor as fully and as effectively as the bequest of the right to occupancy and use created a charge on the property as a whole in favor of William, as to which there is no controversy.

As we read them, the provisions of the will as a whole clearly indicate that it was the intention of the testatrix to charge a bequest on real property. It may be that the *desire* expressed by the testatrix in the *third* item of her will that the property be not sold for at least twenty years would not, standing alone, suffice to create a charge on real property, but when the request in the *third* item is read with the positive declaration of the testatrix in the *seventeenth* item that she had *directed* that her property (including the contents thereof) be not sold until at least twenty years after her death, it is apparent that it was the intention of the testatrix to charge Lyle's interest in the property with the bequests (in the form of bank deposits) made in the *sixth* item of the will. *Buchanan v. Lloyd,* 88 Md. 642, 652, 41 Atl. 1075 (1898). Other than this, further evidence of the creation of a charge is found in the *sixth* item which, after dividing one-half of the income from the property into three parts, *bequeathed* a one-third part to Lyle and *directed* that the other two-thirds be deposited in bank to the credit of Bud and Bertha

Ann. And, as hereinbefore stated, evidence that the charge was to endure for at least twenty years is found in the *third* and *seventeenth* items of the will.

The circumstances surrounding a testator at the time a will is executed are also important in showing, not what the testator meant apart from what the words express, but what the words really mean. To that end, it is always proper to consider and weigh the words used in the light of the surrounding circumstances for the purpose of ascertaining the intention of the testator as expressed in his words and not as an independent fact.[2] Applying this permissible rule of construction to the testamentary expressions in the will of Berta Hardgrove, it is evident that the testatrix, who was concerned about the welfare of her grandchildren because her son had theretofore taken little interest in his children, by directing that two-thirds of Lyle's one-half of the net income from the property should be deposited in bank in equal proportions to the credit of Bud and Bertha Ann, intended to charge Lyle's one-half interest in the property with the payment of the bequests to her grandchildren for at least twenty years in order to provide them with an education or, in the alternative, with the beginning of a fund they could use as a reserve upon attaining the age of twenty-five years. See *Owens v. Claytor,* 56 Md. 129, 135 (1881) ; Miller, *op.cit.,* § 304, *supra.*

Finally, we find nothing in the will indicating that William and Lyle have power to sell and convey the property whenever they choose to do so free and clear of the charges in favor of Bud and Bertha Ann. Furthermore, since the devise of the property to William and Lyle in the *second* item of the will was "subject to the directions and limitations [thereinafter] set out and defined," the restrictions on alienation imposed on the property by the *third* and *seventeenth* items of the will were neither void nor repugnant to the devise made in the *second* item. Nor were such restrictions violative of the rule against perpetuities.

As a result of our interpretation of the will, the construc-

---

2. See Littig v. Hance, 81 Md. 416, a leading case on this point, and the numerous subsequent cases to the same effect.

tion placed thereon by the chancellor must be modified in the following particulars:

1. The devise to Lyle of a one-half interest in the Saint Paul Street property is subject to a charge in favor of Bud and Bertha Ann for at least twenty years regardless of whether or not William continues to manage the property and operate the rooming and apartment house business.

2. While the will did not create a trust on the property it did create a charge in favor of Bud and Bertha Ann on the one-half interest of Lyle in the property as above stated.

3. The statement of the chancellor as to the meaning and effect of the executory devises seems to be correct, but we see no reason to make a determination now with respect to the contingencies that may hereafter arise, either as to "income [or] principal," in the event of the death of any of the parties to this proceeding. See *In Re Clarke's Will* [*Clarke v. Clarke*], 198 Md. 266, 81 A. 2d 640 (1951).

So long as William (or a successor to him) continues to manage the property and operate the business conducted thereon, the respective shares of the net income due Bud and Bertha Ann should be deposited to their credit in bank as heretofore. If, however, William for any cause should cease to "look after" the property and business (thereby forfeiting his right to the home charge), we see no reason why the property may not be sold at any time thereafter for the purpose of partition. In that event one-half of the net proceeds of sale would be payable to William forthwith. One-third of the other one-half of the net proceeds would be payable to Lyle forthwith. But the remaining two-thirds of one-half of the net proceeds of sale realized as a result of commuting the real property into money should be deposited in a savings bank selected by Lyle under an order of the court decreeing the sale which shall provide that one-half of the interest accruing on the commuted fund shall be deposited at regular intervals in the separate savings bank accounts of Bud and Bertha Ann until March 9, 1975, when the period of twenty years fixed by the testatrix for the duration of the charge in favor of Bud and Bertha Ann will expire. On that

date Lyle will have the right to withdraw the principal of the commuted fund.

*Decree modified, and as modified, affirmed; costs to be paid by William H. Hardgrove and Lyle W. Hardgrove in equal proportions.*