# RUTH ANN PHILLIPS GADEKAR *v.*
## HAROLD HUGH PHILLIPS

[No. 1007, September Term, 1976.]

*Decided July 11, 1977.*

The cause was argued before THOMPSON, DAVIDSON and MOORE, JJ.

*Robert E. Farnell, III*, with whom were *Farnell, Freeland & Wright* on the brief, for appellant — cross-appellee.

*Frederick C. Malkus* and *William H. Pattison, Jr.*, for appellee — cross-appellant.

MOORE, J., delivered the opinion of the Court.

Both sides to this declaratory judgment proceeding, in equity, have appealed from a final decree of the Circuit Court for Dorchester County (Edmondson, J.) which determined the conflicting claims of an adult brother and sister with respect to more than 300 acres of farm land and certain improvements. The litigants are the son and daughter of S. Harold Phillips who died in 1969 and whose will devised and bequeathed his residuary estate (after payment of debts and taxes) to his daughter, Ruth Ann Phillips Gadekar, appellant and cross-appellee, "to do with whatsoever she shall deem fit and within her full and complete discretion." There was a proviso, however, that "one-half of any rents and profits or proceeds of sale, or any other income from such property after deduction of necessary costs of management or preservation shall be paid to my beloved son Harold Hugh Phillips." The apparent reason for this disposition was that the relationship between father and son was strained, the son having been an alcoholic who had squandered his money and fought with his father and could not be relied upon to manage the property. After the execution of his will in 1959, the father remarried but made no testamentary provision for his second wife. The latter accordingly filed a renunciation and the son and daughter settled her claim by a conveyance to her of their interest in the residence which she occupied with their father, and by the payment to her of $50,000 in cash.

The cash became available by a mortgage of one of the three farms involved — the "home" farm — consisting of 198 tillable acres and improvements. It is established in the

record that both parties desired to avoid selling any of the farm land. Both wished to keep it "intact." It is also conceded that the mortgage lender, Union Trust Company of Maryland, preferred not to deal with the son and required that clear title to the property be vested in the daughter. Accordingly, an agreement between the son and daughter was entered into on June 19, 1971, whereby the son agreed to convey his interest in the father's matrimonial residence in Hurlock, Maryland to Evelyn L. Phillips, the father's surviving spouse; and he also agreed to convey "all his right, title and interest in and to all of the real estate owned by Samuel Harold Phillips, deceased, unto Ruth Ann Gadekar." *A deed of the same date was executed by him in fulfillment of this commitment.* The sister, in turn, conveyed her interest in the Hurlock property to the stepmother and she agreed to pay her brother $2,660 in cash, the same amount which she herself received in the mortgage transaction. She also covenanted to do everything required by the father's will, namely, to pay one-half of the rents, profits, income and proceeds of any sale to her brother.

In November 1974, approximately five years after the father's death, the brother filed a bill of complaint for declaratory relief, requesting the court to declare that he and his sister were tenants in common as to all the real property of their father except, of course, the single parcel which they had conveyed to his widow. An accounting of all proceeds from the farms was also prayed.[1] The chancellor, after hearing testimony in open court, rendered an oral opinion from the bench and thereafter signed a decree wherein it was ordered that the real property deeded by the brother to the sister on June 19, 1971 "remain under the exclusive management and control of [the sister] subject to the terms and conditions of the Agreement between [them] dated June 19, 1971"; and subject also to the requirement

---

1. Appellant admitted that she had not prepared an annual accounting for her brother but testified that she showed him the books, records and cancelled checks periodically. An audit by a firm of certified public accountants, received in evidence, disclosed that the properties were being managed profitably and that appellant had paid her brother approximately $28,000, as his share, for the period 1971-75.

that she account annually to the brother, "allowing herself one-half of travel expenses she may reasonably incur for management of the property. . . ." [2]

The chancellor also decreed that upon the death of either the brother or the sister "it shall be deemed that any real property subject to the Deed of June 19, 1971 not previously sold, shall be held and owned by the heirs and estate of the decedent on the one part, and the survivor on the other part, as tenants in common. . . ."

It is the position of the sister, as appellant and cross-appellee, that the chancellor erred in several respects. She contends that the brother was guilty of laches and that the case was not a proper one for declaratory relief. On the merits, she argues that the court erred in its determination that upon the death of either the brother or sister, the survivor and the heirs of the decedent would become tenants in common. To the contrary, it is maintained that the sister held title to the property in fee simple absolute, subject to a trust of the income and the proceeds of any sale. The sister also contends that because she occupied the status of a trustee, the court erred in failing to grant her the compensation of a trustee, instead of one-half her travel expenses.

The brother is also dissatisfied with the terms of the decree, contending that the agreement and the deed from him to his sister dated June 19, 1971 should be set aside, the real property ordered to be sold and the proceeds evenly divided between the parties.[3] In his brief he complains that he received no consideration for the conveyance of his interest in the farm properties to his sister in June, 1971 and that there was "a total lack" of "fairness, adequacy and equity" in the June 19, 1971 transactions.

---

**2.** The sister was a resident of Trenton, New Jersey and testified that in the management of the farm she made regular trips between Trenton and Dorchester County, a distance of some 180 miles. (The brother was also a citizen of New Jersey, residing in Hopewell.)

**3.** The brother's brief as cross-appellant thus goes beyond the bill for declaratory relief which prayed no sale but, rather, a determination that the parties held the property as tenants in common.

I

We have carefully considered and must reject the appellant's assignments of error based upon procedural grounds. First, we observe that while the defense of laches was asserted in the appellant's amended answer to the amended bill of complaint, it was not thereafter pursued in the proceedings below and was not ruled upon by the trial court. Accordingly, that claim is not properly before us. Maryland Rule 1085.

Appellant's other procedural argument, that the relief by way of declaratory judgment was inappropriate, must also be rejected. The Maryland Uniform Declaratory Judgments Act, Code, Cts. & Jud. Proc. Art., § 3-409 (a) (1974) provides, with exceptions not here pertinent, that:

> "[A] court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:
>
> (1) An actual controversy exists between contending parties;
>
> (2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or
>
> (3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it."

In our judgment, the trial court was entirely correct in holding that "an actual controversy does exist and there are antagonistic claims between the parties and the provisions of the declaratory judgment statute are applicable." *See Hamilton v. McAuliffe*, 277 Md. 336, 353 A. 2d 634 (1976); *Patuxent Co. v. Commissioners*, 212 Md. 543, 129 A. 2d 847 (1957); *Lucas v. Mercantile-Safe Deposit and Trust Co.*, 29 Md. App. 633, 350 A. 2d 156 (1976). From the pleadings and proceedings below, it is abundantly clear that the parties to this suit are in "actual controversy" over their respective

**rights under the agreement of June 19, 1971. Appellant's claim is wholly devoid of merit.**

## II

From the recitation below of the respective provisions of the will and of the June, 1971 agreement between the parties, it becomes immediately apparent that the father's will was inartfully drawn and that the agreement of 1971 represented, for the most part, a restatement of the principal provisions of the will.[4] The last will and testament of the senior Phillips which he executed on June 26, 1959, was indeed a "simple will." The testamentary clauses were as follows:

"After payment of all my just debts and funeral expenses I hereby give, devise and bequeath all of my property of whatever description whether real, personal or mixed, wheresoever situate, unto my beloved daughter Ruth Ann Phillips Gadekar *to do with whatsoever she shall deem fit and within her full and complete discretion, provided, however, that one-half of any rents and profits or proceeds of sale, or any other income from such property after deduction of necessary costs of management or*

---

4. In a colloquy with the trial court, counsel for the sister stated:

"I agree that this will is a trifle inartful; the agreement is equally inartful, but deliberately so. The temptation was to rewrite the rights of the parties, as I understood them, or as I thought they ought to be, but I didn't think I should do that. I thought I had the duty, especially with two of them, to preserve the status quo, inartful though it was, and not to try to take advantage of anybody, particularly of Mr. Phillips. So I quite agree that the agreement is as bad as the will, but that it was meant to be, and so everybody understands that their position, the position under the agreement and position under the will is the same. There doesn't seem to be any quarrel there. Mr. Phillips said he understood that on the witness stand and Mrs. Gadekar said that was the purpose of the agreement, to try to carry on her father's will. So that is true, it doesn't make any difference which we are under —"

Thereafter, he also observed:

"I can only say what I understand from this document, which I endeavored, apparently I was one hundred percent successful, in drawing the agreement to perpetuate the will. And that to do, because I would have thought it would be unfair and bordered on being unethical for me to draw an agreement that would have done otherwise and would have prejudiced the son's interest."

*preservation shall be paid to my beloved son Harold Hugh Phillips.*

"I have further provided for both my children with life insurance policies on my life, which policies are made out to them individually as specific beneficiaries and which will be paid to them individually upon my death.

"I hereby appoint my said daughter, Ruth Ann Phillips Gadekar, the sole executrix of this my last will and testament and request that she be excused from the necessity of giving bond as such executrix." (Emphasis added.)

The agreement between the brother and sister of June 19, 1971, after a recital of consideration, contained the following covenants:

"1. That the said Harold Hugh Phillips will convey his interest in the dwelling in Hurlock, Maryland to Evelyn L. Phillips [the father's widow].

2. That the said Harold Hugh Phillips will convey all his right, title and interest in and to all of the real estate owned by Samuel Harold Phillips, deceased, unto Ruth Ann Gadekar.

3. Ruth Ann Gadekar agrees to pay to Harold Hugh Phillips the following:

a. The sum of $2,660.00 cash for sale of the [5] aforesaid Hurlock dwelling.

b. One-half of the rents from the property conveyed to Ruth Ann Gadekar as aforesaid.

c. One-half of the profits or proceeds of the sale of any part or all of the real estate conveyed to Ruth Ann Gadekar as aforesaid.

d. One-half of the income of the real estate conveyed to Ruth Ann Gadekar as aforesaid after

---

5. It appears that the mortgage to Union Trust Company of Maryland generated a net sum of $5,320. in cash, above the $50,000 needed to settle with the stepmother, Evelyn L. Phillips. The brother and sister divided the surplus cash evenly, each receiving $2,660.00.

the deduction therefrom of the necessary costs of management or preservation."

It is clear from the record that both brother and sister intended their agreement of June 19, 1971 to follow the "exact terms" of their father's will. The appellant-sister so testified and her brother admitted on cross-examination that after he signed the agreement his interest in the property was the same as it had been under his father's will, that he received "not a bit more than the will." [6]

As we analyze the somewhat unusual situation here presented, it becomes essential to determine in the first instance the legal relationship existing between the parties on June 19, 1971 in consequence of the father's testamentary disposition. The testator, in the broadest and most unqualified language, devised all his property to the appellant herein, his daughter, "to do with whatsoever she shall deem fit and within her full and complete discretion." These words seem clearly intended to grant legal title to the daughter in fee simple absolute. See Md. Ann. Code, Estates and Trusts Art. § 4-408 (1974). This devise was subject, however, to the burden imposed by the proviso "that one-half of any rents and profits or proceeds of sale, or other income from such property after deduction of necessary costs of management or preservation shall be paid to my beloved son, Harold Hugh Phillips."

We think it clear from the language of the will and established principles of law that no trust was created for the son's benefit but, rather, an equitable charge was imposed upon the property in his behalf. The intention to create a trust under the terms of a will must be apparent and the specific words "trust" and "trustee" are not necessary. *Hardgrove v. Hardgrove*, 240 Md. 634, 646, 215 A. 2d 183, 190 (1965). Similarly, no particular terminology is necessary to create a charge. 1 G. G. & G. T. Bogert, *Trusts and Trustees* § 31 (2d ed. 1965). Where, as in the instant

---

6. The brother also affirmed that he did not wish the farm properties to be sold, that some settlement with his stepmother was necessary in order that the property would not have to be sold and that his own name and credit "wasn't to good" because of his drinking problem at that time.

case, a testator devises or bequeaths property subject to the payment of income to or the enjoyment of benefits by a person other than the devisee, he thereby creates an equitable charge and not a trust. 1 A. Scott, *Law of Trusts* § 10 (3d. ed. 1967).

The incidents of an equitable charge are thus explicated in the Restatement:

> "In the case of an equitable charge . . . , the person having title to property holds it subject to an equitable interest in another person. If an equitable charge is created, the equitable encumbrancer has an equitable lien upon the property, but the person who holds subject to the charge is the owner of the property, subject only to the lien. . . ." *Restatement (Second) of Trusts* § 10 (1959).

The Court of Appeals of Maryland in *Hardgrove v. Hardgrove, supra,* applied the distinction under circumstances where a testator devised certain real property to his two sons, William and Lyle, as joint tenants. In a subsequent clause, he bequeathed one-half the income produced by the devised property to William and provided that the other one-half was to be shared equally between Lyle and the testator's two grandsons. (The grandsons' share was to be deposited by Lyle in a savings account for the education of the grandsons.) In holding that the grandsons' interest in the income of the property constituted a charge and not a trust, Judge Horney explained:

> "[W]hile it is true that a charge on land is never presumed and the intention to create a charge must be clear or no charge will be created, . . . when the intention of the testator is clearly implied, a direction that grandchildren be educated out of profits from real property under the direction of his executors is regarded as a charge." (Citations omitted.) 240 Md. at 646, 215 A. 2d at 190. *See Owens v. Claytor,* 56 Md. 129 (1881); *Meakin v. Duvall,* 43 Md. 372 (1875); *Warfield v. Gambrill,* 1 Gill & J. 503 (1829).

Strikingly apposite to the instant case is *Ogle v. Durley*, 77 So. 2d 688 (Miss. 1955), where the testatrix, Mrs. Lucy Wilson, devised to her son, T. Webber Wilson, a 420 acre farm. In a codicil to her will, Mrs. Wilson wrote:

> "I want Webber to divide equally the income of the farm with Rosa Mai Durley, his sister, as long as she lives."

In construing the above provision as a charge, and in holding that the sister did not gain an interest in the property itself, the court stated:

> "There was a clear devise of the land to T. Webber Wilson. There was not a devise of the rents, but merely a direction to the devisee to divide the income with Mrs. Durley. We are of the opinion that Mrs. Durley did not acquire a life estate, legal or equitable in the [farm]." 77 So. 2d at 691.

The Mississippi Supreme Court went on further to distinguish between a charge and an equitable trust:

> "The codicil to Mrs. Wilson's will charged the devisee with the duty to divide equally the income with Mrs. Durley — nothing more. We may not presume her intent was to burden her son, T. Webber Wilson, with the rather onerous role of a trustee, with the resulting duties and responsibilities required of a fiduciary. No words of trust were employed. It is not manifest or reasonably inferable that the testator intended to to create a trust in the sense of making the devisee a fiduciary, and to so hold would be to press too far the words of the codicil." 77 So. 2d at 693.

One of the significant differences between a trust and a charge is that the beneficiary of the trust maintains a beneficial interest in the corpus, whereas the beneficiary of a charge holds only a security interest in the property to the

extent of the benefits conferred. See 1 G. G. & G. T. Bogert, *Law of Trusts* § 14 (5th ed. 1973).

However, the critical distinction between trusts and charges for purposes of resolution of the issues posed in this case is the absence of any fiduciary element in the chargee's duty toward the beneficiary of the charge. "The duty of a devisee subject to an equitable charge with respect to property is a negative one; he must not so deal with the property as to destroy or interfere with the equitable lien of the encumbrances. . . ." Scott, *Law of Trusts, supra,* at § 10. Other than this negative duty, the devisee of property subject to the charge has no special duties toward the beneficiary:

> "*They are free to contract with each other; the interest of the beneficiary may be sold or released to the one against whose property it runs; and there is no burden on the buyer or releasee to prove good faith or full disclosure. They stand in the business relation of debtor and secured creditor. The burden of proving actual fraud or other invalidating cause is on the beneficiary of the charge, if he claims the chargee has taken advantage of him.*" (Emphasis added.) Bogert, *Trusts and Trustees, supra,* § 31 at 256.

It follows, therefore, that Mrs. Gadekar and her brother, Mr. Phillips, were free to contract with each other, as they did, on June 19, 1971, and certainly there was no impediment to their execution of an agreement which in practical effect merely restated the provisions of their father's will. We find that the brother, as cross-appellant, may not prevail on grounds of fraud because the evidence is insufficient to establish fraud so as to invalidate that contract; and there was no breach of any fiduciary duty because no such duty existed. Furthermore, the brother's contention that the contract was unenforceable for lack of consideration is unsupportable. The appellee received the sum of $2,660 in

cash as a result of the settlement with the testator's widow. The settlement would not have been possible except by a sale of farm land which the brother did not desire or by the mortgage which his agreement with the sister made possible. We think there can be no serious issue as to the existence or not of a *quid pro quo* for the execution by the brother of the June, 1971 agreement. Even if no economic benefit had been derived by him, the appellee received the satisfaction of keeping his father's holdings intact. See 1 A. Corbin, *Corbin on Contracts* § 121 (1963); *Swift v. Allan*, 211 Md. 588, 128 A. 2d 260 (1957).

In summary, we conclude that the agreement between the parties of June 19, 1971 was valid and enforceable as was the deed executed by the appellee conveying to the appellant all his right, title and interest in his father's property. Just as, however, the devise of the father's property to the daughter was burdened by a charge in favor of the brother, so the agreement and conveyance of 1971 was subject to the same charge. The only issue remaining is its duration.

Neither the will nor the agreement between the parties expressly declared the duration of the charge, nor is there any language either in the will of the decedent or in the agreement between his son and daughter from which any inference can be drawn that the burden of the charge upon the farm lands in question would survive the named beneficiary. There is no reference, in either instrument, to the son's heirs or assigns notwithstanding the fact that at the time of the testator's death the appellee had a son age 7 or 8 and that the son was surviving at the time of the execution of the 1971 agreement. Despite his knowledge of his grandson's existence, the testator made no provision for him in his will either by way of a continuation of the equitable charge or otherwise.

Generally, a charge is limited by express language contained in the instrument to a duration long enough to accomplish the purpose intended, *see, e.g., Hardgrove v. Hardgrove, supra* (20 year charge for the education of the

beneficiaries); *Owens v. Claytor, supra* (payment of life annuity held to create a charge); or for a specific number of years, *see* Restatement (Second) of Trusts, *supra,* at § 10; or for the life of the beneficiary, *see, e.g., Meakin v. Duvall, supra* (charge created a permanent home for the testator's daughters during their lives).

In this case, in the absence of any expressed intention on the part of the testator to extend the charge beyond the son's life and in the absence of any such provision in the agreement between the parties, we have found no authority that would support a holding that the charge would redound to the benefit of the heirs of the brother and would burden the property in the hands of the sister and her heirs upon the demise of the brother. We may not write a new will for the testator nor change the terms of a valid and enforceable agreement between the parties. The conclusion is therefore inescapable that the charge upon the real property held by the appellant in favor of the appellee exists only for the life of the appellee. Accordingly, we reverse and set aside so much of the decree as provides that "upon the death of either Harold H. Phillips or Ruth Ann Gadekar it shall be deemed that any real property subject to the Deed of June 19, 1971 not previously sold, shall be held and owned by the heirs and estate of the decedent on the one part, and the survivor on the other part, as tenants in common."

## III

Appellant challenges the provisions of the decree which denied her compensation in the form of a "management fee" of 10% of the gross income from the property. As we have found, appellant is not a trustee and we must therefore reject her contention that she is entitled to compensation as a trustee even though no specific provision for such compensation had been made. *See* Estates and Trusts Article § 14-103; *Sokol v. Nattans,* 26 Md. App. 65, 337 A. 2d 460 (1975). The chancellor's allowance to appellant of an amount equal to one-half of her transportation expenses to

728

and from Dorchester County was fair and reasonable. We find no abuse of discretion.

> *Decree affirmed in part and reversed in part: cause remanded for entry of a decree in accordance with this opinion; appellant and appellee to pay their respective costs.*